569 A.2d 684

**William D. FRAZIER**

v.

**STATE of Maryland.**

**No. 74, Sept. Term, 1989.**

Court of Appeals of Maryland.

Feb. 14, 1990.

---

598

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued Before ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., HOWARD S. CHASANOW, Judge * Specially Assigned, and

---

* Howard S. Chasanow, a judge of the Seventh Judicial Circuit, was specially assigned to the Court of Appeals at the time the case was argued.  He was sworn in as a judge of the Court on 17 January, 1990.

CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired) Specially Assigned).

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

I

The General Assembly of Maryland has long been concerned with the unlawful use of handguns. From time to time, it enacted legislation encompassing these types of weapons. One of the statutes early enacted was codified as § 445(c), Article 27 of the Maryland Code (1957). As set out in the 1987 Replacement Volume, it reads, in part pertinent to this appeal:

It shall be unlawful for any person who has been convicted of a crime of violence ... to possess a pistol or revolver.[1]

"Pistol or revolver" was defined as meaning "any firearm with a barrel less than twelve inches in length, including signal, starter, and blank pistols." Section 441(c). "Crime of violence" was defined as including

robbery; robbery with a deadly weapon; ... or an attempt to commit any of the aforesaid offenses....

*Id.*, § 441(e). The penalty upon conviction of violating the statute was a fine of not more than $1,000 or imprisonment for not more than three years, or both. *Id.*, § 448.[2]

In 1972, the Legislature, more and more concerned with the increasing use of handguns in the commission of crimes, enacted a comprehensive handgun control statute. Acts

---

1. Maryland Code, Article 27, § 445(c) was rewritten by Acts 1988, Ch. 690. Acts 1989, Ch. 428 rearranged the language. Throughout the amendments, however, it remains a crime for a person who has been convicted of a crime of violence to possess a pistol or revolver. Md. Code (1957, 1987 Repl. Vol., 1989 Cum. Supp.), Art. 27, § 445(c).

2. Acts 1989, Ch. 428, effective 1 July 1989, stated that the crime was a misdemeanor and increased the fine to $5,000.

1972, Ch. 13, codified as Article 27, §§ 36B–36F.[3] The Legislature announced its policy in § 36B(a):

*Declaration of policy.*—The General Assembly of Maryland hereby finds and declares that:

(i) There has, in recent years, been an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involve the use of handguns;

(ii) The result has been a substantial increase in the number of persons killed or injured which is traceable, in large part, to the carrying of handguns on the streets and public ways by persons inclined to use them in criminal activity;

(iii) The laws currently in force have not been effective in curbing the more frequent use of handguns in perpetrating crime; and

(iv) Further regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens.

In furtherance of that policy, the Legislature declared: Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person, and any person who shall wear, carry or knowingly transport any handgun, whether concealed or open, in any vehicle traveling upon the public roads, highways, waterways, or airways or upon roads or parking lots generally used by the public in this State shall be guilty of a misdemeanor; and it shall be a rebuttable presump-

---

**3.** Section 36G ("Restrictions on possession of firearms at demonstrations in public places") was added by Acts 1982, Ch. 482.

Section 36H was added by Acts 1985, Ch. 724. With certain exceptions, it declared that the State of Maryland

hereby preempts the rights of any county, municipal corporation, or special taxing district whether by law, ordinance or regulation to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession or transportation of ... a handgun as defined in Art. 27, § 367(a)....

tion that the person is knowingly transporting the handgun. . . .

Section 36B(b). The penalty upon conviction was made to depend on certain circumstances in which the offense was committed. Section 36B(b)(i)-(iv). Under § 36F(a)

The term "handgun" as used in this subheading shall include any pistol, revolver, or other firearm capable of being concealed on the person, including a short-barreled shotgun and a short-barreled rifle as these terms are defined below, except it shall not include a shotgun, rifle or antique firearm as those terms are defined below.[4]

See *Howell v. State*, 278 Md. 389, 394–396, 364 A.2d 797 (1976). Some weapons may be such as to fall within the ambit of both statutes. The revolver found in the possession of Frazier was such a weapon.

## II

## A

Around midnight on 8 May 1987, Officer Frederick Bealefeld of the Baltimore City Police Department, assigned to the Western District Drug Enforcement Unit, "was teamed up with the rest of [the] Drug Enforcement Unit and in the process of executing a narcotics search and seizure warrant" for the second floor apartment of 624 Baker Street, a three-story rowhouse in Baltimore City. Bealefeld described the premises:

[E]ntrance is gained to that house through the front by means of going up a series of cement steps to the landing and then there's a small vestibule area and then there's a common door which leads into a hallway and there's steps to go up into the apartment, the second floor, and then

---

**4.** "Short-barreled shotgun" was defined in subsection (a)(3), "short-barreled rifle" in subsection (a)(4), "shotgun" in subsection (a)(5), "rifle" in subsection (a)(2), and "antique firearm" in subsection (a)(1).
Subsequent amendments did not affect the definition of "handgun." See Acts 1988, Ch. 6 and Ch. 438 and Acts 1989, Ch. 5, § 1.

there's a door right at the top of the steps that blocks entry to go up to the third floor apartment.

The police pulled up to the house. Bealefeld was in the lead car with several other officers. They were followed by "at least one more carload of police officers." As they pulled up in front of the house, two persons were seated on the front steps, one of whom was later identified as "[William] Donald Frazier."

As we began rushing towards the house, Frazier jumped up from the steps and immediately reached towards his waistband area and was moving backwards toward the small vestibule area of the building.

Bealefeld saw Frazier pulling an object from his waistband. The officer could not see clearly what the object was when he first got out of the car, but as he rushed toward the steps, with his pistol drawn, ordering Frazier to stop, he saw that the object "appeared to be a revolver." "It looked to me to be a revolver in his hand." Bealefeld and several other officers arrived at the steps at the same time. Officer Maurice Price grabbed Frazier's wrist and "began wrestling for the gun." Bealefeld and other officers were able "to force [Frazier] down" and Price pulled the gun from him. Frazier was restrained and the raid proceeded. The officers gained entrance to the second floor apartment by battering down two doors. Narcotics were found in the apartment.

The weapon seized from Frazier was a Colt .38 caliber revolver. It was an "air-weight type model, meaning it's a .38 caliber but on a very light frame."

The gun is very light to carry around. Also it has a certain type hammer [designed so it] would not get hung up in clothing and it could be easily carried and not snag on clothing when carried.

The gun was loaded with six .38 caliber cartridges, three of

which were semi-jacketed hollow-point.[5]

## B

After Frazier was placed under arrest, it was ascertained that he had been previously convicted in the Circuit Court for Baltimore City of attempted robbery with a deadly weapon upon his plea of guilty, that he had been sentenced, and that the judgment had been affirmed on appeal. Three statements of charges were filed against him, alleging, respectively, that he "[d]id wear, carry and transport a handgun upon and about his person in Baltimore City," that he "[d]id possess a revolver, after being convicted of a crime of violence in Baltimore City," and that he did conspire to distribute controlled dangerous substances. The statements of charges were sent to the Circuit Court for Baltimore City for trial. Frazier filed a pretrial motion in which he represented

[t]hat [he] is charged with the commission of two or more unrelated crimes, the joint trial of which would prejudice [his] right to a fair and impartial trial as to each charge.

"Wherefore," he prayed, that the court "sever the trial of these indictments." Upon a hearing the court denied the motion. Trial proceeded before a jury. At the conclusion of the State's case-in-chief, the court granted Frazier's motion for judgment of acquittal as to the conspiracy charge. The jury rendered verdicts of guilty on the remaining two charges, designated on the verdict sheet given the jurors as "wearing, carrying and transporting a handgun," and "possession of a revolver after being convicted of a

---

**5.** The judge accepted Officer Bealefeld as "a limited expert in the field of firearms examination and use, including hollow point [bullets]." Bealefeld explained that a hollow-point bullet has a hole drilled in the center part of the bullet either by the factory or the person using the gun. A semi-jacket bullet has a liner around the bullet to keep it intact as it flies towards its target.

A hollow-point cartridge, when it hits, pretty much makes the same sort of entrance [hole as a regular bullet] but when it comes out or exits the body, the bullet itself tends to explode and expand a great deal and it makes a very large exit wound, much larger than a standard bullet would do when it hits various parts of the body.

crime of violence." Sentences were imposed. Frazier appealed from the judgments. A majority of the panel of the Court of Special Appeals affirmed the judgments. *Frazier v. State*, No. 1317, September Term, 1988, filed 25 April 1989, unreported. We granted Frazier's petition for a writ of certiorari and ordered that the case be certified to this Court, accepting for review the two questions presented in the petition:

1) Did the trial judge err by denying [Frazier's] request for a separate trial on the charge of possessing a pistol or revolver by one who has been convicted of a crime of violence?

2) Must the convictions and sentences for wearing, carrying, or transporting a handgun and for possessing a pistol or revolver by a person who has been convicted of a crime of violence be merged?

### III

#### *Joint or Separate Trials*

#### A

At the hearing on the motion to sever, defense counsel pointed out that an essential element of Art. 27, § 445(c) is that there be a prior conviction of a crime of violence. He observed:

[t]hat particular evidence would not be admissible against [Frazier] as far as the other two charges are concerned ... until and unless my client testified and then that evidence would only be admissible insofar as it goes to his credibility.

Defense counsel declared that "under these circumstances ... it would be highly prejudicial, as far as disposition and the jury's consideration on the [other two counts]." The prosecutor agreed that "it would be prejudicial, but that is, of course, the nature of the offense before the court." The court asked:

Well wouldn't a better way to do it be to deny the motion and let it be tried and I will instruct the jury appropriately? Isn't that the way this matter shall be handled?

Defense counsel brought to the court's attention the teachings of *McKnight v. State,* 280 Md. 604, 375 A.2d 551 (1977), to the effect, in his words,

limiting instructions in the situation where the evidence that is admissible on the one charge and not to the other is evidence of another crime, but the limiting instructions are not sufficient to overcome the prejudice.

The trial judge did not read *McKnight* that way. He opined that the factual situation in *McKnight*—"a series of ... eight separate assaults and robberies or holdups"—is "not this case." The judge explained:

This man is charged in the same happening, all out of the same happening with possession of a handgun as a felon.... I think the jury has a right to know exactly what the facts behind the happening resulting in a charge, all arising out of the same happening at the same time.... Therefore, the motion is denied.

The judge said: "I will grant the curative instruction."

Defense counsel asked the judge to defer the ruling on the motion until after Frazier had made a decision either to testify or to remain silent. The judge declined to do so.

I want to give you a better shot at it if you feel I am wrong. I'm going to make it right now because I don't want it conditioned upon whether he's going to testify or not to testify because he has an absolute right not to testify and I don't want to be part of the pressure one way or the other as to that decision, and if I withhold my decision at this time, it may well be so conceived or construed by another Court, and, therefore, my decision is a denial....[6]

---

6. As it turned out, the question whether Frazier would testify became moot. He was not present at any time during the trial on the merits and was convicted *in absentia.* We gather from the transcript of the proceedings of a hearing on a motion for a new trial, at which he was

At the trial, a certified copy of the docket entries with respect to Frazier's prior conviction was admitted in evidence over his objection and given to the jury. The judge included in his instructions that if the jury found that Frazier was in possession of a revolver, it was the jury's "job to determine whether or not [Frazier] has been previously convicted of a crime of violence." He cautioned:

> You have heard evidence of a previous conviction of the defendant. 'You may consider this conviction in determining the guilt or innocence of the defendant with respect to the crime charged of possession of a revolver after having been convicted of a crime of violence; however, you may not consider this conviction in determining the defendant's guilt or innocence of the crime of wearing, carrying, or transporting a handgun.

Defense counsel requested clarification. The court further instructed on the matter:

> [I]n order to be able to consider the second charge in this case, that is, possession of a revolver after having been convicted of a crime of violence, you must have already then found the defendant guilty of the first charge [wearing, carrying or transporting a handgun]. If you have found the defendant not guilty of possession of a revolver, then, of course, you can't find him guilty of the second charge.

The jurors said that they understood. Defense counsel requested further clarification respecting the two elements of the second charge. The judge complied. He told the jury that it had two things to consider as to the second charge. In addition to the element of possession of a

---

present and testified, that after several postponements to enable him to find certain witnesses, he simply decided not to appear at the time scheduled for trial. His absence was purely voluntary and tantamount to an election not to testify in his own behalf.

The court instructed the jury that it

> may not consider the absence of the defendant throughout the course of this trial in deciding his guilt or innocence. The jury must base its conclusions upon all of the evidence as to the defendant's guilt or innocence based upon the evidence presented.

revolver, "it is your job to determine whether or not he has previously been convicted of a crime of violence...."

## B

■■■■ The matter of a severance or a joinder is ordinarily committed to the discretion of the trial judge. *Grandison v. State*, 305 Md. 685, 705, 506 A.2d 580, *cert. denied*, 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174, *reh. denied*, 479 U.S. 1001, 107 S.Ct. 611, 93 L.Ed.2d 609 (1986); *Graves v. State*, 298 Md. 542, 544, 471 A.2d 701 (1984). And, ordinarily, when only one defendant is involved, the judge may order two or more offenses, whether felonies or misdemeanors, or any combination thereof, to be tried together if the offenses are of the same or similar character. *Graves* at 544, 471 A.2d 701. But we have specifically authorized the judge, in ruling on a motion for a joint trial when a defendant is charged in two or more charging documents, to "inquire into the ability of either party to proceed at a joint trial." Md. Rule 4–253(b).[7] This was in accord with the overbearing concern of the law of this State with respect to joint or separate trials of a defendant charged with criminal offenses to safeguard against potential prejudice. To this end we adopted Maryland Rule 4–253(c):

> If it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, on its own initiative or on motion of any party, order separate trials of counts, charging documents, or defendants, or grant any other relief as justice requires.

In the light of this caveat, we examined in *McKnight* the propriety in a jury trial of a joinder, permissible in the first instance because the offenses were of similar character,

---

7. Joinder and severance of criminal trials was formerly governed by Md. Rule 745, and, prior to the adoption of that rule, by Md. Rules 734 and 735. The present Rule 4–253 is identical to its immediate precursor, Rule 745, which was virtually identical, in pertinent part, to its precursors, Md. Rules 734 and 735. Opinions of this Court citing to Rules 745 or 734 or 735 are appropriate for Rule 4–253.

where the evidence would not be mutually admissible at separate trials. We observed that in any given case of similar offense joinder, tried before a jury, the likely prejudice caused by the joinder must be balanced against the considerations of economy and efficiency in judicial administration. *McKnight*, 280 Md. at 609–610, 375 A.2d 551. In doing so, consideration should be given to likely prejudice to a defendant in three important respects:

> First, he may be embarrassed, or confounded in presenting separate defenses.... Secondly, the jury may cumulate the evidence of the various crimes charged and find guilt when, if the offenses were considered separately, it would not do so. At the very least, the joinder of offenses may produce a latent hostility, which by itself may cause prejudice to the defendant's case. Thirdly, the jury may use the evidence of one of the crimes charged, or a connected group of them, to infer a criminal disposition on the part of the defendant from which he may also be found guilty of other crimes charged.

*Id.* at 609, 375 A.2d 551 (citations omitted). We opined, particularly in light of the third aspect of likely prejudice, that "where offenses are joined for trial because they are of similar character, but the evidence would not be mutually admissible, the prejudicial effect is apt to outweigh the probative value of such evidence." *Id.* at 610, 375 A.2d 551. We concluded that, at a jury trial, "a defendant charged with similar but unrelated offenses is *entitled* to a severance where he establishes that the evidence as to each individual offense would not be mutually admissible at separate trials." *Id.* at 612, 375 A.2d 551 (emphasis added). We iterated and applied this holding in *State v. Jones*, 284 Md. 232, 395 A.2d 1182 (1979), recognized it with approval in *Tichnell v. State*, 287 Md. 695, 415 A.2d 830 (1980), and explicated it in *Graves*, 298 Md. at 545, 471 A.2d 701. We said in *Graves*, at 545, 471 A.2d 701:

> The *McKnight* holding took away the discretion of the trial judge presiding at a jury trial to join similar offenses where the evidence as to them was not mutually admissi-

ble. As we have indicated, in such circumstances, there was prejudice as a matter of law which compelled separate trials.

We deemed that

[t]he rationale underlying the *McKnight* holding was our concern that a jury would be unable to set aside the likely prejudice engendered by the joinder.

*Graves* at 545–546, 471 A.2d 701. We even questioned in *McKnight*

the ability of a jury to disregard evidence which was inadmissible on one of the charges although limited instructions were given by the court. We recognized that the law frequently permits the jury to hear evidence admitted for a limited purpose, and presumes that the jury will comply with an appropriate instruction. "But," we declared, "we are unwilling to make that assumption in circumstances such as these...."

280 Md. at 615, 375 A.2d 551. *See Graves* [298 Md.] at 546, 471 A.2d 701.

The intendment of *McKnight* was that, in a jury trial, the presumption of prejudice as a matter of law be invoked only when the crimes, although similar, arose from separate incidents, independent of each other, unrelated, not bound together by common scheme, motive, or any other of the exceptions to the "other crimes" rule, which would make the evidence with respect to them mutually admissible at separate trials. *See State v. Faulkner,* 314 Md. 630, 552 A.2d 896 (1989). This intendment is clear from the circumstances in which the presumption of prejudice as a matter of law was applied in *McKnight v. State,* 280 Md. 604, 375 A.2d 551, and *State v. Jones,* 284 Md. 232, 395 A.2d 1182, and was not applied in *Tichnell v. State,* 287 Md. 695, 415 A.2d 830, each tried before a jury. *McKnight* involved four independent and distinct robberies committed in the same neighborhood, over a one-month period. The crimes had no more than a general resemblance to each other. Since the manner of their commission would suggest itself to almost anyone disposed to commit such crimes, they did not bear

the "earmark" or "signature" of the accused. We held that the trial court committed prejudicial error in failing to grant McKnight's motion for a separate trial for each offense. In the circumstances, the impact of such evidence on the jury was apt to outweigh its probative value, so prejudice was presumed as a matter of law. In *Jones*, the defendant and several others robbed or attempted to rob persons at three different business establishments within the course of two and one-half hours. We found that the State failed to prove a single inseparable plan encompassing the offenses and did not establish

> that the various acts constituting the offenses naturally related to one another by time, location, circumstances and parties so as to give rise to the conclusion that they are several stages of a continuing transaction.

284 Md. at 243, 395 A.2d 1182. We held that the trial court abused its discretion in failing to grant a severance. On the other hand, we held in *Tichnell* that the trial judge did not abuse his discretion in consolidating three indictments for trial. The *McKnight* principle did not apply, we concluded, because the joined offenses were closely related to each other and occurred within a fifteen-minute period within a tightly confined area. The proximity of time and space within which the offenses were committed distinguished the case from *Jones* and *McKnight*. *See Tichnell*, 287 Md. at 712–713, 415 A.2d 830.

■ The trial judge was correct when he concluded that *McKnight* "is not this case." And the majority of the panel of the Court of Special Appeals were correct when they distinguished *McKnight* and *Graves* by pointing out:

> *McKnight* and *Graves* involved separate crimes at separate times, whereas in the instant case, the crimes charged were related and rose out of the same incident.

*Frazier v. State, supra,* slip opinion at 3. The circumstances of the case at hand were far removed from the circumstances of *McKnight* in which we announced and applied the "prejudice as a matter of law" principle. As we have seen, it involved four independent and distinct robberies

over a one-month period. And the case here was significantly different from *Jones,* in which we applied the principle, even though the factors of time and proximity of the offenses were more restricted than those in *McKnight.* It involved, as we noted *supra,* robberies or attempts to rob persons at three different business establishments within the course of two and one-half hours. The case now being reviewed was more akin to *Tichnell,* where we refused to apply the principle. The offenses in *Tichnell* were closely related to each other and occurred within a fifteen-minute period within a tightly confined area. The circumstances before us now were even more circumscribed. The offenses here arose out of one incident involving one person and one handgun. They could not be more closely related—the bases of the crimes were not merely similar, they were one and the same. The time, location, and circumstances of the seizure of the handgun resulting in the charges were in no wise different. It is obvious that the prejudice as a matter of law principle does not apply.

Inasmuch as the circumstances here do not lend themselves to the presumption of prejudice as a matter of law, in order for the judgments not to survive in the face of the joinder, Frazier must show that he was improperly prejudiced by the joinder. We cannot conceive of a factual situation which would be less conducive to untoward prejudice than the circumstances here. The convictions go to the elements of the offense. Frazier was caught red-handed in possession of the handgun. Exactly the same evidence as to each charge would support a finding that Frazier unlawfully possessed a handgun, the foundation of both offenses. The only additional testimony as to one charge would be the fact of the prior conviction. As we noted, *supra,* the trial judge said at the hearing on the motion to sever in denying the motion:

> This man is charged in the same happening, all out of the same happening with possession of a handgun as a felon.... I think the jury has a right to know exactly what the facts behind the happening resulting in a

charge, all arising out of the same happening at the same time....

Our refusal in *McKnight* to accept limiting instructions to the jury as sufficient to cure an improper joinder is not to be taken as a holding that such instructions would be inadequate in all circumstances. In the circumstances of this case, in light of the careful caution the judge gave the jury, twice further explained at the request of defense counsel, and the acknowledgment of the jurors that they understood, our reluctance to accept the curative effect of limiting instructions in *McKnight* is not appropriate. All in all, we conclude that the record was sufficient to establish that Frazier was not unduly prejudiced by the joinder. We hold that the trial judge did not err by denying Frazier's request for separate trials.

## IV

### *Merger*

■ The general rule for determining whether two criminal violations, treated separately under the statutory provisions, should be deemed the same when both violations are based on the same transaction, is the so-called "same evidence" or "required evidence" test set forth in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)....

*Whack v. State,* 288 Md. 137, 141–142, 416 A.2d 265 (1980), *appeal dismissed and cert. denied,* 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981).

Under this test, the violations are separate if each " 're-quires proof of an additional fact which the other does not,' " ... or, stated another way, if "[e]ach of the offenses created requires proof of a different element." ... However, if only one has a distinctive element, they are deemed to be the same offense under the required evidence test. We have generally applied this standard to decide the permissibility of successive trials, as well as multiple punishment, under the double jeopardy clause of

the Fifth Amendment, under Maryland common law double jeopardy principles, and as a matter of Maryland merger law.

*Id.* at 142, 416 A.2d 265 (citations and footnote omitted). *Whack* pointed out at 142, 416 A.2d 265: "In addition, we have recognized that the required evidence test is not the only standard for determining when two statutory violations, based on the same transaction, will be treated as one." For example, "[t]he imposition of multiple punishment . . . is often particularly dependent upon the intent of the Legislature." *Id.* at 143, 416 A.2d 265.

[A]lthough the required evidence test is the normal standard for deciding the allowability of separate sentences, the Legislature may not in certain circumstances intend that separate sentences be imposed for two offenses growing out of the same transaction, even though the two offenses are clearly distinct under the required evidence test. On the other hand . . . even though two offenses may be deemed the same under the required evidence test, separate sentences may be permissible, at least where one offense involves a particularly aggravating factor, if the Legislature expresses such an intent.

*Id.* (citation and footnote omitted). With respect to Article 27, § 445(c) and § 36B(b), there is every indication that the Legislature intended that separate sentences may be imposed for the two offenses. What Judge Eldridge, speaking for the Court in *Whack*, said, in discussing the legislative intent in this area, is appropriate here.

When it enacted the handgun control statute, Ch. 13 of the Acts of 1972, Art. 27, §§ 36B—36F, the Legislature specifically addressed the matter of other statutes encompassing handguns, and it indicated its intent as to which of those other statutes should no longer cover the use of handguns. Thus, prior to 1972, Art. 27, § 36, had proscribed the carrying of concealed weapons and the carrying or wearing of weapons openly with intent to injure, including handguns. Also prior to 1972, Art. 27, § 36A, had provided a maximum penalty of three years' impris-

onment for carrying "any ... deadly weapon of any kind" on public school property. Finally, prior to 1972, there was local legislation regulating and penalizing certain uses of handguns. In the handgun control act of 1972, the Legislature dealt with the above-described statutory provisions, so as to prohibit the pyramiding of penalties under both the existing law and the new law for the unlawful use of a handgun. It amended Art. 27, § 36, to expressly delete handguns from the coverage of the concealed weapons statute (Ch. 13, § 1, of the Acts of 1972). It further amended Art. 27, § 36A, to provide that where the weapon carried on public school property is a handgun, the penalty provisions of § 36A do not apply, but instead, the offender shall be sentenced in accordance with the penalty provisions of the new statute (Ch. 13, § 2, of the Acts of 1972). Lastly, with respect to local legislation regulating handguns, the Legislature stated (Ch. 13, § 6, of the Acts of 1972):

> "[A]ll restrictions imposed by the law, ordinances, or regulations of the political subdivisions on the wearing, carrying, or transporting of handguns are superseded by this Act, and the State of Maryland hereby preempts the right of the political subdivisions to regulate said matters."[8]

288 Md. at 145–146, 416 A.2d 265. "Consequently," Judge Eldridge concluded, "in enacting the handgun act, the Legislature was concerned with the matter of duplicative legislation. Where it desired no duplication, it specifically amended or superseded those other statutes." It is significant that the Legislature did not amend or supersede Article 27, § 445(c). So, even if offenses are deemed the same

---

**8.** See Acts 1985, Ch. 724, codified as Article 27, § 36H. And see Article 27, § 445(a):

All restrictions imposed by the laws, ordinances or regulations of all subordinate jurisdictions within the State of Maryland on possession or transfers by private parties of pistols and revolvers are superseded by this section and the State of Maryland hereby preempts the right of such jurisdictions to regulate the possession and transfer of pistols and revolvers.

under the required evidence test, the Legislature may punish certain conduct more severely if particular aggravating circumstances are present, by imposing punishment under two separate statutory offenses. *See Newton v. State*, 280 Md. 260, 274 n. 4, 373 A.2d 262 (1977). The Legislature's concern about the possession of a handgun, and its additional concern about the aggravating circumstance of the handgun being possessed by a person who has been convicted of a crime of violence, is not unreasonable. When all of this is viewed in the light of the legislative policy declared in § 36B(a), *see supra,* it is plain that the Legislature did not intend to prohibit separate penalties for violation of the two statutes. We hold that the two offenses of which Frazier was convicted do not merge.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED;

COSTS TO BE PAID BY PETITIONER.