569 A.2d 1284

**Frank Leroy KRAUSS**

v.

**STATE of Maryland.**

**No. 590, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Feb. 28, 1990.

Certiorari Granted July 13, 1990.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and John L. Scarborough, State's Atty., for Cecil County of Elkton, on the brief), for appellee.

Argued before ALPERT, BLOOM and FISCHER, JJ.

FISCHER, Judge.

On March 16, 1988, Frank Leroy Krauss, appellant, was convicted by a jury in the Circuit Court for Cecil County (Rollins, J.) of driving under the influence of alcohol. Appellant was sentenced to sixty days incarceration and was fined $250.00. On appeal, he raises the following issues for our review:

    I. Whether the trial judge erred in admitting evidence of appellant's refusal to take a breathalyzer test.

    II. Whether the trial judge erred in refusing to give a properly requested instruction.

    III. Whether the trial judge erred in admitting irrelevant, prejudicial testimony.

On the evening of September 3, 1988, David Dean was travelling on Liberty Grove Road when he noticed an oncoming car heading directly toward him. He immediately veered his car toward the right side of the roadway, ending up on an embankment. Collecting his wits, Dean turned his

car around and spotted the car that had forced him off the road. He followed it for nearly one-half of a mile before it suddenly stopped. Dean testified that he, too, stopped his car behind that of the appellant.

Appellant came out of his vehicle and "rushed" at Dean who, by this time, had exited his own car. Dean then pushed the appellant away from him, and the appellant fell to the ground hitting his head. Dean testified that he could smell the odor of alcohol upon the appellant and that the appellant "appeared drunk." Appellant then picked himself up complaining of being hit in the head. Neighbors of Mr. Dean arrived and were instructed to call the police. Appellant, at that point, left the scene on foot.

A short time later, the police arrived and were told what happened. Inspecting appellant's car which he had left behind, the police noticed empty beer cans and a cooler with beer on the back seat of the car. A look-out was then placed for the appellant, and he eventually was apprehended and brought back to the scene. There, one of the investigating officers, Trooper Carter, detected the odor of alcohol emanating from the appellant and discovered from questioning appellant that appellant had been drinking prior to the incident. The trooper arrested the appellant and had him perform a battery of field sobriety tests. Appellant was then advised of his rights to take a chemical test of his breath, but he refused to take the test.

The appellant told a very different story. He testified that on the evening in question he had gone to a birthday party. While at the party he had imbibed a "beer and a half." He then left the party and while driving up Liberty Grove Road encountered another car. When that car swerved into his lane, appellant testified that he "ran up over the bank" to avoid a collision. He then continued driving up the road, but eventually stopped because he thought he had punctured a tire. He ultimately discovered that his brake line was "busted."

In the meanwhile, a car pulled up behind him, and as he approached it, the driver, Mr. Dean, accused him of trying to run him off the road and pushed him. Appellant further testified that he tumbled backwards and hit his jaw on the bumper of the car. While getting to his feet, he spied Mr. Dean "poking his finger at his wife's chest." Appellant protested, and Mr. Dean then hit him on the back of the head. The appellant remembered nothing that followed.

### *Chemical Breath Test*

Appellant contends that the trial judge erred in allowing the State to introduce into evidence the fact of his refusal to submit to a chemical test of his breath. He asserts that Transportation Code § 16–205.2(c) prohibits the introduction of such evidence and that § 10–309(a) of the Courts Article is not controlling. Appellant's contentions are confused and without merit.

Maryland Trans.Code Ann. § 16–205.2 provides:

(a) Request by police officer.—A police officer who has reasonable grounds to believe that an individual is or has been driving or attempting to drive a motor vehicle while intoxicated or while under the influence of alcohol may, without making an arrest and prior to the issuance of a citation, request the individual to submit to a preliminary breath test to be administered by the officer using a device approved by the State Toxicologist.

(b) Advice to person to be tested.—The police officer requesting the preliminary breath test shall advise the person to be tested that neither a refusal to take the test nor the taking of the test shall prevent or require a subsequent chemical test pursuant to § 16–205.1 of this article.

(c) Use of results of test.—The results of the preliminary breath test shall be used as a guide for the police officer in deciding whether an arrest should be made and may not be used as evidence by the State in any court action. The results of the preliminary breath test may be used as evidence by a defendant in a court action. The taking of

or refusal to submit to a preliminary breath test is not admissible in evidence in any court action. Any evidence pertaining to a preliminary breath test may not be used in a civil action.

(d) Refusal to take test not violation of § 16–205.1; test under § 16–205.1 not affected.—Refusal to submit to a preliminary breath test shall not constitute a violation of § 16–205.1 of this article and the taking of a preliminary breath test shall not relieve the individual of the obligation to take the test required under § 16–205.1 of this article if requested to do so by the police officer.

As the evidence concerned appellant's refusal to submit to a *chemical* test, § 16–205.2 is not applicable to the instant case. Section 16–205.2 of the Transportation Code deals exclusively with the preliminary breath test, while § 16–205.1 concerns the chemical breath test. The preliminary breath test is not the same test contemplated by § 16–205.1.

In August, 1980, during a time of increased social awareness about the consequences of drinking and driving and the increased demand for more stringent laws, Governor Harry Hughes appointed a Task Force on the Drinking Driver. In its review, the Task Force determined that only a coordinated comprehensive effort directed against the drinking driver problem in Maryland would be successful. The Task Force made numerous recommendations to the legislature. One of its recommendations was to authorize the use of a preliminary breath test by police officers. *See* Drinking Driver Task Force Report, October, 1980 p. 3.

Consequently, the preliminary breath test was first enacted in 1981 Md. Laws 241. It was later repealed and reenacted with amendments by Chapter 95, Laws of Maryland 1982, and codified as § 16–205.2 of the Transportation Code. The preliminary breath test is a tool used to screen individuals whom police officers reasonably suspect of being intoxicated. It is a pre-arrest device which also helps to exonerate innocent drivers whose behavior and reflexes are slowed or somewhat impaired by the intake of medication or

other medical conditions. Drinking Driver Task Force Report October, 1980 p. 8. *See also* The Legislative Study Group Issue Reports 1981 Session, The Maryland State Legislature, Volume 7.

The operative word here is preliminary. If the officer has reasonable grounds to believe that alcohol is involved in the case, the preliminary breath test is performed before an individual is arrested. In the case *sub judice*, appellant was placed under arrest, was given a battery of field sobriety tests, and was advised of his right to take a chemical breath test which he refused to do. Consequently, the statute which came into play was Maryland Transportation Code Annotated § 16–205.1.

Section 16–205.1 triggers Md.Cts. & Jud.Proc.Code Ann. § 10–309. Section 10–309 provides:

(a) Test not compulsory.—Except as provided in § 16–205.1(c) of the Transportation Article, a person may not be compelled to submit to a chemical analysis provided for in this subtitle. Evidence of chemical analysis is not admissible in a prosecution for a violation of § 21–902 of the Transportation Article if obtained contrary to its provisions. No inference or presumption concerning either guilt or innocence arises because of refusal to submit. The fact of refusal to submit is admissible in evidence at the trial.

(b) Consequences of refusal.—This subsection does not limit the provisions of the vehicle laws regarding the consequences of refusal to submit to a chemical test or tests.

(c) Extent of limits on admissibility of analysis—Violation of TR § 21–902.—Nothing in this section precludes or limits the admissibility of evidence of chemical analysis in any prosecution other than for a violation of § 21–902 of the Transportation Article.

(d) Same—Analysis obtained under TR § 16–205.1.—Nothing in this section precludes or limits admissibility of evidence of chemical analysis which is

obtained as provided in § 16–205.1(c) of the Transportation Article.

The exclusionary rule in § 10–309 of the Courts Article applies when there has been a failure to comply with the provisions of §§ 16–205.1(c) and 21–902 of the Transportation Code. Appellant's counsel at the trial level conceded that the arresting officer complied with the sections.

Section 16–205.2(c) of the Transportation Code excludes the results of the preliminary breath test as evidence by the State in any court action. Such results are to be used solely as guides for the police officer in deciding if an arrest should be made. Since § 16–205.2 contains its own exclusionary rule, § 10–309 of the Courts Article Code does not apply. Consequently, the judge did not err in allowing the State to admit into evidence the appellant's refusal to submit to a § 16–205.1 chemical breath test.

### Instructions

■ Appellant complains that the trial judge erred in refusing to give his requested instruction limiting the use of evidence concerning his refusal to take a chemical breath test. Appellant requested the following instruction:

> The only reason you have been permitted to hear evidence concerning whether Defendant did not take a breath or blood test is in determining whether the police followed the proper procedures upon detaining and/or arresting Defendant for the offenses of driving under the influence of alcohol and/or driving while intoxicated.

Instead, the judge instructed the jury that appellant's "refusal could not in any way be used against him as evidence of his guilt."

*"Although a party is entitled to have the court give jury instructions which correctly state the law on every issue that is fairly generated by the evidence,* the court need not grant any requested instruction if the matter is fairly covered by the instructions actually given." *Jackson v. State,* 69 Md.App. 645, 660, 519 A.2d 751 (1987) (emphasis

added) (citing *Harris v. State*, 11 Md.App. 658, 663, 276 A.2d 406 (1971)); Md. Rule 4–325(c).

The instruction given was in accordance with the issues generated by the evidence. No evidence was presented that would have called into question the procedure used by the police officers in detaining and arresting the appellant. For the trial judge to have given such an instruction would have confused the jury. Therefore, the trial judge committed no error in denying appellant's requested instruction.

## *Testimony*

■ Appellant further complains that it was error for the trial judge to allow the State's witness, David Dean, to explain his motivation in chasing after the appellant after being run off the road. Appellant claims that the testimony was prejudicial.

On direct examination, Mr. Dean testified:

Q. Now, when you turned around, what was your reason for turning around?

A. Well, what passed through my mind at the moment was that we had just recently had a—well, recently within six months we had had a woman just up the road who had been killed by—

Mr. Thompson: I'm going to object, Your Honor.

Mr. Buck: I think it's relevant to why he turned around, Your Honor.

The Court: Overruled. Go ahead.

The Witness: She had been killed on the way home by a head on accident with a driving while intoxicated—

Following a bench conference Dean testified further, "Why I was turning around, I assumed in my mind that this was a person who was driving impaired, and that I was turning around to try to stop him."

Any error that may have resulted from the admission of this testimony was harmless. Mr. Dean's statements merely explained his actions and his state of mind as the course

of events unfolded. They were not inherently prejudicial and do not warrant a new trial.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.