587 A.2d 1102

**Frank Leroy KRAUSS**

v.

**STATE of Maryland.**

**No. 42, Sept. Term, 1990.**

Court of Appeals of Maryland.

April 1, 1991.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued Nov. 7, 1990 before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

Reargued Feb. 4, 1991 before ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Maryland (Retired, Specially Assigned), MARVIN H. SMITH, Judge of the Court of Appeals of Maryland (Retired, Specially Assigned), and RAYMOND G. THIEME, Jr., Circuit Administrative Judge of the Fifth Judicial Circuit of Maryland (Specially Assigned).

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

More than 50 percent of all highway fatalities in Maryland and the entire United States are alcohol related. The number killed on our nation's highways annually is equal to all Americans, approximately 50,000, killed over a ten year period in Vietnam.

The National Safety Council conservatively estimates that the economic loss to society for a single highway fatality is $200,000. The human and economic impact of

these fatalities is catastrophic and affects all of society. The drinking driver brings personal grief and hardship to families and loved ones and affects everyone through increased costs for law enforcement, medical, corrections, rehabilitation, and social services.

From the foreword by Colonel W.T. Travers, Jr., then Superintendent of the Maryland State Police, to the "Maryland Driving While Intoxicated Manual" prepared by the Chemical Test for Alcohol Unit of his organization (1985).

## I

From time to time, the General Assembly has enacted legislation in an effort to cope with the problem of the driver whose faculties have been impaired by the ingestion of alcoholic beverages. It has forbidden a person to drive any vehicle while intoxicated or while under the influence of alcohol. Maryland Code (1977, 1987 Repl.Vol.) § 21–902(a) and (b) of the Transportation Article (TR).[1] TR § 27–101(a) made it a crime to violate § 21–902(a) or (b), and various subsections of § 27–101 authorized sanctions of imprisonment, fine, and suspension or revocation of the privilege of operating a vehicle.

The Legislature has attempted to facilitate the prosecution of drunk drivers. TR 16–205.1(a) declares:

Any person who drives ... a motor vehicle on a highway ... is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a chemical test to determine the alcohol content of his blood if he should be detained on suspicion of driving ... while

---

**1.** References to the Maryland Code are to the provisions in effect at the time of the case here decided. We note that recently substantial revisions of certain provisions of the Courts and Judicial Proceedings Article and the Transportation Article, which involve matters dealt with in the case at hand, have been enacted. They were made effective, however, 1 January 1990, and are not relevant to our decision. *See* Acts 1989, ch. 284. *See also* Acts 1990, ch. 11 and ch. 413.

intoxicated, [or] while under the influence of alcohol, or in violation of an alcohol restriction.

The Legislature has designated two types of chemical breath tests to determine the alcohol content of the blood of a suspected drunk driver: a "preliminary breath test," and a test hereinafter called a "Breathalyzer test." The tests are administered at different times, employ different equipment, and serve different purposes.

### The Preliminary Breath Test

The preliminary breath test was established by TR § 16–205.2(a). It provided:

A police officer who has reasonable grounds to believe that an individual is or has been driving or attempting to drive a motor vehicle while intoxicated or while under the influence of alcohol may, without making an arrest and prior to the issuance of a citation, request the individual to submit to a preliminary breath test to be administered by the officer....

"The results of the preliminary breath test," subsection (c) explains, "shall be used as a guide for the police officer in deciding whether an arrest should be made...." Although the results of the test "may be used as evidence by a defendant in a court action," they "may not be used as evidence by the State in any court action." *Id.* And, "[t]he taking of or refusal to submit to a preliminary breath test is not admissible in evidence in any court action," nor may "[a]ny evidence pertaining to a preliminary breath test ... be used in a civil action." *Id.* Furthermore, "[r]efusal to submit to a preliminary breath test shall not constitute a violation of [TR] § 16–205.1 ... and the taking of a preliminary breath test shall not relieve the individual of the obligation to take the test required under [TR] § 16–205.1 ... if requested to do so by the police officer." Subsection (d). Subsection (b) declares:

[N]either a refusal to take the test nor the taking of the test shall prevent or require a subsequent chemical test pursuant to TR § 16–205.1....

### The Breathalyzer Test

As we have seen, the consent clause of TR § 16–205.1 is subject to the provisions of Maryland Code (1977, 1989 Repl.Vol.) §§ 10–302 through 10–309 of the Courts and Judicial Proceedings Article (CJ). Those sections contain comprehensive and carefully structured provisions which apply to the Breathalyzer test. Section 10–302 prescribes:

> In a prosecution for a violation of a law concerning a person who is driving ... a vehicle in violation of § 21–902 of the Transportation Article ..., a chemical test of his breath or blood may be administered to the person for the purpose of determining the alcohol content of his blood.

Succeeding sections deal with the time within which the test must be taken; the qualifications of the person administering the test and the equipment to be used; the type of test administered; the admissibility of test results without the presence or testimony of the technician; the results of analysis and presumptions; limitations on other evidence of intoxication and driving under the influence; and refusal to submit to the test.

Ordinarily, a person "may not be compelled to submit to a chemical analysis," and, in any event, "[e]vidence of chemical analysis is not admissible in a prosecution for a violation of § 21–902 of the Transportation Article if obtained contrary to its provisions." CJ § 10–309(a).

The fact of refusal is admissible in evidence at the trial. *Id.* But:

> No inference or presumption concerning either guilt or innocence arises because of refusal to submit.

*Id.*

### The Role of the State Toxicologist

With respect to the person who may administer a preliminary breath test, TR § 16–205.2(a) speaks in terms of "the officer" who stops a driver. With respect to the Breathalyzer test, CJ § 10–304(b) requires that the test "be admin-

istered by a qualified person." CJ § 10–304(a)(3) explains that a "qualified person"

> means a person who has received training in the use of the equipment in a training program approved by the toxicologist under the Postmortem Examiners Commission and who is either a police officer, a police employee, or an employee of the office of the Chief Medical Examiner.[2]

The equipment used to administer both the preliminary breath test and the Breathalyzer test must be approved by the State toxicologist. *See* TR § 16–205.2(a) as to the preliminary breath test and CJ § 10–304(b) as to the Breathalyzer test.

The toxicologist, pursuant to the responsibility directed to him under CJ § 10–304, has issued regulations. The regulations address the training and certification of personnel performing tests of breath and blood for the purpose of determining the alcohol content in the body of drivers suspected of driving while under the influence of beverages containing alcohol and pertain to the approval and certification of equipment used in conducting such tests. *See* Regulations of the Toxicologist, Office of the Chief Medical Examiner, Post Mortem Examiners Commission, State of Maryland, Regarding [Tests of] Breath and Blood for Alcohol, effective 1 April 1983. The regulations are included as Appendix O to the Maryland DWI Manual, prepared by the Chemical Test for Alcohol Unit, Crime Laboratory Division of the Maryland State Police (1985). The 1983 regulations were revised effective 1 January 1990, superseding any previous regulations. The Maryland State Law Library has a copy of the 1983 and the 1990 regulations, but they are not otherwise published. The equipment approved to administer the preliminary breath test is the "Alco–Sensor" as

---

**2.** *See* Maryland Code (1982, 1990 Repl.Vol.) § 5–302 of the Health–General Article (HG) for the establishment of the Postmortem Examiners Commission. The Commission's staff includes a toxicologist. HG § 5–305(2)(iv).

described in the 1983 regulations, § III A 3 at 0–15. *See* the 1990 regulations, § V A 3 at 29. The equipment approved to administer the test called for in TR § 16–205.1(a) is the "Breathalyzer" as described in the 1983 regulations, § II A 1 at 0–4. *See* the 1990 regulations, § IV A at 19.

The regulations of the toxicologist permit only police officers who have received training in the use of preliminary breath test devices to conduct preliminary breath tests. Regulations (1983) § III B at 0–16; Regulations (1990) § V B at 30. The Breathalyzer operator must be "a full time police officer or a full time laboratory technician of a participating agency," who shall have successfully completed the Basic Breathalyzer Operator Course, and retake the course every 15 months. Regulations (1983) § II B 1; Regulations (1990) § IV E 1.

## II

### A

Frank Leroy Krauss was found by a jury in the Circuit Court for Cecil County to be guilty of driving a vehicle while under the influence of alcohol.[3] The Court of Special Appeals affirmed the judgment entered on his conviction. *Krauss v. State*, 82 Md.App. 1, 569 A.2d 1284 (1990). We ordered the issuance of a writ of certiorari on Krauss's petition. After the case was briefed and argued before us, we ordered that it be reargued. Having heard the reargument, we proceed to decision. The sole question before us is:

Whether the trial judge erred in admitting evidence of [Krauss's] refusal to take a breathalyzer test.

---

**3.** The jury rendered not guilty verdicts of driving while intoxicated and failing to drive to the right of the center of the road.

Citations charging Krauss were issued 3 September 1988, and the guilt stage of his trial began on 16 March 1989. He was sentenced on 28 April 1989 and immediately noted an appeal.

## B

Before trial on the merits began, defense counsel moved "in limine to prevent the State from introducing any evidence concerning [Krauss's] refusal to submit to the breath test." His motion was founded on relevance. He made clear that he was "not contesting in any way that the trooper [who arrested Krauss] followed the statutory procedures" in offering the tests.

> We stipulate and agree that the trooper followed all the procedures; that in fact, [Krauss] was offered to take a breath test, and in fact, [Krauss] actually refused to take a breath test.

Defense counsel emphasized:

> I am telling the Court at this time that I do not in any way intend to comment in opening, closing, during trial or through witnesses that the trooper did anything not permitted or in accordance with the statute. And in fact, I am going to not say one word, and neither is my client going to say one word, about the fact that the trooper offered him to take a test and my client refused.

Defense counsel referred to that part of CJ § 10–309(a) which permitted evidence of refusal to take the Breathalyzer test in evidence at the trial but declared that "no inference or presumption concerning either guilt or innocence arises because of the refusal to submit." He believed that the two provisions were not in conflict. He suggested that the "inference or presumption" clause, vis-à-vis the admissibility of the refusal to take the test provision,

> was placed in the statute to give the State an opportunity, and certainly correctly, to rebut any allegations that the trooper did anything other than that which is provided by statute.

But, he emphasized, Krauss is not arguing that. Therefore, in the circumstances in this case, the refusal does not go to guilt or innocence and is not relevant. If it is not relevant, it is inadmissible. He declared:

Now, the only thing, the reason the State can possibly want that in there is to show the fact or try to sway the jury to consider that as a piece of evidence along with all other evidence that my client, in fact, was under the influence or driving while intoxicated. If it's not material, if it's not relevant to guilt or innocence, it should not come in regardless of the fact that there's a statute that permits its admissibility.

The State did not speak to the motion, and, without comment, the judge said, "I'm going to admit it." [4]

## C

### (1)

On appeal before us, Krauss first latches on to the notion that defense counsel was arguing a preliminary breath test refusal. *See Krauss*, 82 Md.App. at 4–7, 569 A.2d 1284. Therefore, he declares, the exclusionary rule of TR § 16–205.2(c) applies to make the evidence of the refusal inadmissible. Although the trooper did not explicitly state that he was referring to a refusal to take a Breathalyzer

---

**4.** It appears that the matter had been discussed previously with the judge in his chambers, but if that proceeding was recorded, it is not in the record before us.

During the course of defense counsel's argument, he said that if necessary he would request an instruction that "no inference or presumption concerning either guilt or innocence arises because of the refusal to submit [to the test]." The judge said, "I'll grant that." The judge did so instruct the jury. He charged:

The fact that the Defendant did not take a breath or blood test may not be considered by you in any way in determining whether the Defendant is guilty of driving while intoxicated or under the influence of alcohol or failure to keep to the right side of the roadway.

In Maryland a person stopped or arrested for driving while intoxicated or under the influence of alcohol has an absolute right to refuse to submit to such a test, and that refusal cannot in any way be used against him as evidence of his guilt.

Defense counsel voiced objection in these words:

I would ... incorporate by reference my argument made in the motion in limine as to why that instruction should be given. Of course reserving naturally, you know, any appeal I might have on the Court's rulings in that motion and its ruling on the evidence.

test, we find it perfectly clear from the transcript of the proceedings that the refusal Krauss admitted, counsel argued, and the court ruled on, concerned a Breathalyzer test and not a preliminary breath test.[5]

(2)

 In the event we decide, as we have, that the refusal was with respect to the Breathalyzer test, Krauss would have us look at the impact of the "no inference or presumption" clause on the "admissibility of a refusal to submit to a breath test" clause in CJ § 10–309(a). He asks us to determine

> whether the Legislature intended merely to permit the admission of a chemical test refusal where relevant to a matter other than guilt or innocence or intended that evidence of a chemical test refusal was to be admitted even if not relevant to a material issue and, if the latter, whether a statute mandating the admission of irrelevant prejudicial evidence is constitutional.

---

5. In the trial on the merits, it was elicited that Krauss was involved in an altercation with another motorist. Krauss had almost run the motorist off the road, and the motorist turned to give chase. The motorist either stopped Krauss, or found him at a stop. There was some kind of confrontation, and Krauss fell or was pushed, striking his head on the ground or on a bumper. When Trooper Dana R. Carter, of the Maryland State Police, arrived on the scene, Krauss had walked down the road. He was located and admitted that he was the driver of the car, and that he had been drinking. Carter noticed an odor of alcohol on Krauss's breath and observed that Krauss "had slurred speech, his eyes were glazed and he was very incoherent." Carter then placed Krauss under arrest, took him to the police barracks and "administered the field sobriety test." Carter testified, "And at the Barrack, he refused to take the breathalyzer test." Defense counsel's objection was overruled. Carter explained that the field sobriety test was "a dexterity test to determine if you have basic coordination. It can be hindered by alcohol. Gives us an idea of how much a person's had to drink." It is clear that at the time Krauss refused to submit to the breath test, he was already under arrest. It was not necessary to seek a preliminary breath test "as a guide for the police officer in deciding whether an arrest should be made. . . ." We do not read the officer's testimony at the hearing on the motion or at the trial on the merits as indicating that a preliminary breath test was ever administered.

Since we believe that the Legislature intended that the refusal to take a Breathalyzer was to be admissible only where material and relevant to a matter other than guilt or innocence, we do not reach the constitutional issue.

As Krauss points out, until July 1, 1986, CJ § 10–309(a) provided in relevant part: "No inference or presumption concerning either guilt or innocence arises because of refusal to submit. The fact of refusal to submit is *not* admissible in evidence at the trial." (Emphasis added). Chapter 652 of the Acts of 1986 amended the section by deleting the word "not." The legislative history of the bill reveals that the amendment was originally intended to eliminate the no inference or presumption clause and to make the fact of refusal to submit admissible in evidence. Senate Judicial Proceedings Committee, *Bill Analysis: Senate Bill 85* 1 (1986). The stated legislative purpose was to provide an additional penalty for refusal to submit and to enable the jury to be provided with an explanation for the State's failure to offer test results. Senate Judicial Proceedings Committee, *Summary of Committee Report: Senate Bill 85* 1–2 (1986). As enacted, however, the law retained that part of § 10–309(a) prohibiting the drawing of any inference concerning guilt or innocence, while making the fact of the defendant's refusal to submit admissible.

When CJ § 10–309(a) is considered in the light of the principles of statutory interpretation, which we have so often stated and applied, *see Kaczorowski v. City of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987), the restriction on the inference or presumption that arises from the refusal to take the test is not at odds with making the evidence admissible. From the provisions of the statute, it is obvious that the Legislature recognized that the mere fact of refusal to take the Breathalyzer test was collateral to the issue of whether a driver was intoxicated or under the influence of alcohol. In other words, the refusal was not material or relevant to the issue of guilt or innocence. But, the Legislature also appreciated that in certain circumstances the fact of refusal to submit to the test may be material and

relevant to collateral matters, that is, issues other than guilt or innocence, as, for example, when a defendant claims the enforcement authorities did not properly afford an opportunity to take the test. Thus, it made the refusal admissible, but subjected the admission to the restriction.

We said in *State v. Joynes,* 314 Md. 113, 119, 549 A.2d 380 (1988):

There are two important components to relevant evidence: materiality and probative value. Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. The second aspect of relevance is probative value, which is the tendency of evidence to establish the proposition that it is offered to prove. *See McCormick on Evidence* § 185, at 541 (E. Cleary 3d ed. 1984). Although the relevancy assessment is not susceptible to precise definition, it has been suggested that "the answer must lie in the judge's own experience, his general knowledge, and his understanding of human conduct and motivation." *See McCormick on Evidence* § 185, at 544 (E. Cleary 3d ed. 1984). Evidence which is thus not probative of the proposition at which it is directed is deemed "irrelevant." *Dorsey [v. State ],* 276 Md. [638,] 643, 350 A.2d [665 (1976) ]; Wharton's *Criminal Evidence* § 151 (13th ed. 1972).

We pointed out in *Joynes, id:*

In *Leeson v. State,* 293 Md. 425, 433–34, 445 A.2d 21, 25 (1982), we reaffirmed the traditional test of admissibility of evidence in a criminal case as articulated in *Dorsey....* The *Dorsey* court outlined the responsibility of a trial judge in determining the relevancy of proposed evidence. There, this Court stated:

The real test of admissibility of evidence in a criminal case is "the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue." ... [O]ur predecessors stated it to be "an elementary rule that evidence, to be admissible, must be relevant to the issues

*and must tend either to establish or disprove them."* [Citations omitted].

The quote was from *Dorsey v. State,* 276 Md. 638, 643, 350 A.2d 665 (1976) (emphasis added in *Joynes* ).

■ In the case at hand, defense counsel made abundantly clear that he was not going to challenge, in any way, explicitly or implicitly, that Krauss was properly informed as to the taking of the Breathalyzer test and that he refused to take it. Defense counsel said that he did not intend to, and, in fact, he did not at anytime, question the trooper's credibility or the propriety of the procedures leading to Krauss's admitted refusal. In short, there was no collateral matter in question, and there appeared no sound reason for the State to introduce evidence of the refusal except to influence the jury toward a verdict of guilty. In the circumstances, evidence of the refusal had no proper relation to the only proposition for which it may reasonably be said to have been offered, namely the guilt of the accused. Thus, it was not material. The refusal had no proper probative value to establish the guilt of the accused. Thus, it was irrelevant. Furthermore, placing the evidence before the jury was fundamentally unfair in the face of the Legislature's admonition. We hold that the trial judge abused his discretion in denying Krauss's motion in limine.

### III

■ The State suggests that even if the admission of the challenged evidence was erroneous, the error was harmless. There was, of course, evidence concerning Krauss's sobriety, including his admission that he had been drinking, his appearance, his actions at the scene, the presence of three or four empty beer cans and a cooler in the back seat of his car, and his failure to perform satisfactorily the field sobriety tests. But, there was also evidence that Krauss had a head injury, apparently sustained when he fell at the confrontation with the irate motorist. His sister testified that he did not appear to be drunk when he left a party at her

house shortly before the incident. The next day, when she picked him up at the jail, his head was bleeding, and he was groggy and incoherent. He was taken to a hospital where the wound was stitched. The hospital records show that he suffered a "scalp laceration" and a "concussion syndrome." The arresting trooper testified that had he been aware that Krauss had fallen and hit his head, was unconscious for several minutes, and suffered a concussion, as was adduced at the trial, he might not have given the field tests or afforded them the weight that he did.[6] Krauss testified that he had not consumed anything alcoholic preceding his sister's party, and that at her party he drank only "a beer and a half."

It was the jury's function to weigh this evidence, some tending to show that Krauss was intoxicated or under the influence of alcohol and some tending to show that he was not, and to judge the credibility of the witnesses. Under the rule we adopted in *Dorsey*, in order to find that erroneously admitted evidence was harmless, we must be able, upon our own independent review of the record, to declare a belief, beyond a reasonable doubt, that the error in admitting the challenged evidence in no way influenced the jury's verdict. 276 Md. at 659, 350 A.2d 665. We are unable to declare such a belief in the circumstances here. We are not "satisfied that there is no reasonable possibility that the evidence complained of ... may have contributed to the rendition of the guilty verdict[s]." *Id.*

Furthermore, we do not believe that the judge's brief instruction regarding Krauss's refusal to take the Breathalyzer test, see note 4, *supra*, served, in the circumstances, to overcome the prejudice inherent in the challenged evidence and to disassociate, in the minds of the jurors, the refusal to take the test from the question of Krauss's guilt

---

6. It seems that at some point the trooper asked Krauss if he needed medical treatment and Krauss said that he did not.

or innocence of the charges.[7] *Cf. Frazier v. State,* 318 Md. 597, 569 A.2d 684 (1990); *McKnight v. State,* 280 Md. 604, 375 A.2d 551 (1977).

The bottom line is that, in the circumstances of this case, permitting evidence of Krauss's refusal to take the Breathalyzer test to go before the jury was erroneous; the error was not harmless; and the prejudicial nature of the error was not cured by the instruction given. Krauss is entitled to a new trial.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED;

CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR CECIL COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL;

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY CECIL COUNTY.

McAULIFFE, J., dissents in which CHASANOW and SMITH, JJ., join.

---

7. We observe that the trial judge refused to give the following instruction presented by defense counsel:

> The only reason you have been permitted to hear evidence concerning whether [Krauss] did not take a breath or blood test is in determining whether the police followed the proper procedures upon detaining and/or arresting [Krauss] for the offenses of driving under the influence of alcohol and/or driving while intoxicated.

The Court of Special Appeals held that the refusal to give this instruction was not erroneous because, "No evidence was presented that would have called into question the procedure used by the police officer [leading to the refusal]." *Krauss v. State,* 82 Md.App. 1, 8, 569 A.2d 1284 (1990). Of course, that was precisely the point of the motion in limine.

Our quotation of the instruction is not to be taken as an indication that we approve or disapprove its phrasing or its propriety in the circumstances of this case. The propriety of that instruction was not presented to us. We refer to the instruction only to show that the judge did not explain, beyond the instruction given, the "inference or presumption" clause of the statute.

McAULIFFE, Judge, dissenting.

My quarrel is with Part II(C) of the Court's opinion and with the result.

The Court today holds invalid the express determination of the General Assembly that evidence of a driver's refusal to take a chemical test for intoxication should be admissible in a prosecution for violation of § 21–902 of the Transportation Article of the Maryland Code. The Court does not invalidate the legislation on a constitutional basis, and appropriately so in view of the Supreme Court's holding that admission of evidence regarding refusal does not offend the Federal Constitution. *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (not fundamentally unfair for South Dakota to use refusal to take the test as evidence of guilt). Rather, the Court grounds its decision on the belief that refusal to take the test *cannot* be relevant if the defendant agrees not to mention or argue the absence of test results.

I disagree, because I believe the legislature validly could have assumed that: 1) jurors are generally aware that persons stopped on reasonable suspicion of driving while intoxicated or under the influence of alcohol are given chemical tests for intoxication; 2) jurors are likely to draw an inference unfavorable to the State when the State fails to introduce evidence of chemical test results, irrespective of whether that point is argued; and, 3) permitting the jurors to know that test results are not available because the defendant exercised his right to refuse to take the test, while not permitting the jurors to draw any inference from that fact, will have the effect of "creating a level playing field," i.e., removing the availability of inferences favorable or unfavorable to the State which might otherwise arise from the jurors' knowledge of the existence of chemical test laws.

All jurors are residents of this State, and I think it is safe to say most jurors are licensed drivers. Every person who has applied for a driver's license in this State in recent

years has been informed of Maryland's "implied consent" law, by this notice prominently printed on the application form:

## IMPORTANT NOTICE TO APPLICANT—IMPLIED CONSENT

Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented to take a chemical test to determine the alcohol content of his blood if he should be detained on suspicion of driving or attempting to drive while intoxicated or while under the influence of alcohol.

If misapprehension exists in the mind of the average juror today concerning chemical tests for intoxication, I would suggest it is the mistaken belief that a suspect has no right to refuse the test. Thus, it is reasonable to assume that jurors are apt to speculate about the absence of chemical test results when a defendant is charged with driving while intoxicated or under the influence of alcohol.

Ordinarily, when a court seeks to determine whether a rational basis exists to support a legislative action, the court will consider all of the possible facts that the legislature might reasonably have found to exist, without the necessity of finding that the legislature actually considered those facts. Here, however, we know that the legislature considered at least one basis upon which I suggest it ultimately may have acted. In the Summary of Committee Report prepared for the Senate Judicial Proceedings Committee for Senate Bill 85, by which this amendment was accomplished, the following statement appears:

The Maryland Department of Public Safety and Correctional Services points out that during jury trials for alcohol-related offenses, when the State fails to introduce the results of a chemical test, members of the jury feel that the State is withholding the results because they were too low. This bill would end that perception. Sen-

ate Bill 85 would improve the enforcement of Maryland's transportation laws.

Equally likely, I suggest, is the possibility that jurors faced with the unexplained absence of test results will conclude that the police improperly refused to offer a test to the accused.

The majority opines that "the Legislature recognized that ... the refusal [to take the chemical test] was not material or relevant to the issue of guilt or innocence." Majority opinion at 386. Again, I disagree. The Supreme Court recognized, in *South Dakota v. Neville,* that the refusal to submit to a chemical test is a fact having evidentiary value that may be used against a defendant.[1] I think it is clear that a defendant's refusal to take a chemical test may give rise to an inference of consciousness of guilt, which may properly be used against the defendant. I think it is also clear that the legislature understood this, but simply made the decision to prohibit the State from using an otherwise admissible inference.

At the same time, however, the legislature did not wish to confer a further benefit on the defendant who refused a test by having the jury draw an unwarranted inference that the State was withholding important evidence. Thus, the legislature amended the statute to allow the trier of fact to be told why test results were not produced, but prohibited the use of that information as a foundation for any inference. In my judgment, the legislature had a rational basis for amending the statute in the manner it did, and its action should be upheld. Judges Chasanow and Smith join in this opinion.

---

1. The defendant in *Neville* did not argue that the evidence of his failure to submit to the test lacked evidentiary value. To the contrary, he argued that such evidence was incriminating, and he sought relief through his Fifth Amendment right against self-incrimination. The Supreme Court held that the refusal to take the test after an officer has lawfully requested it is not an act coerced by the officer, and thus not protected by the Fifth Amendment. 459 U.S. at 564, 103 S.Ct. at 922.

MARVIN H. SMITH, Judge of the Court of Appeals of Maryland, dissenting.

I join in the dissent of Judge McAuliffe. However, I would go further. Given the instruction to the jury by the trial judge, I would hold that if there is error, it is harmless beyond a reasonable doubt.