567 A.2d 172

**Thomas Edward KINDER**

v.

**STATE of Maryland.**

**No. 627, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Dec. 26, 1989.

---

Bradford C. Peabody, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County of Upper Marlboro, on the brief), for appellee.

Argued Before WILNER, BISHOP, JJ., and JAMES S. GETTY, Judge of the Court of Special Appeals (retired), Specially Assigned.

WILNER, Judge.

While a passenger in a taxicab, appellant became involved in an altercation with the cab driver. He and the cab driver gave two quite different versions of what occurred. Under the driver's version, appellant could have been convicted of robbery with a deadly weapon or any of its assorted lesser

included offenses; if appellant were believed, he would be guilty of theft of property worth less than $300 but probably nothing more.

In a four-count indictment filed in the Circuit Court for Prince George's County, appellant was charged with robbery with a deadly weapon (Count One), robbery (Count Two), assault with intent to steal (Count Three), and theft under $300 (Count Four).

Trial was held from March 13–15, 1989. At the end of the case, the State *nol prossed* Counts Three and Four, under the following circumstances:

"[STATE'S ATTORNEY]: Your Honor, initially the State is going to enter nol pros as to Count Three and Four. That is assault with intent to rob and theft under [$300].

THE COURT: I haven't seen a prosecutor do that in years. I haven't seen it done in years.

Now that he has taken all the steam out of your motions, would you like to make a motion?

[DEFENSE COUNSEL]: No, he hasn't. I find what he did very interesting."

Although the Opinion of the Court of Appeals in *Hook v. State,* 315 Md. 25, 553 A.2d 233 (1989), limiting the State's right to *nol pros* lesser included offenses over objection, had been filed a month earlier, on February 13, 1989, defense counsel was unaware of the Opinion and, for that or other reasons, made no objection to the *nol pros.* He was certainly aware of the effect of the *nol pros,* for, in closing argument to the jury, he said:

"So far as this case is concerned, I think I said to you in my opening statement, that the truth lies somewhere between nothing happening and what Mr. Bahta says happened and I think that is what the evidence has shown. The State has proven that something happened. *They proved that the theft happened but they have chosen not to go forward against Mr. Kinder on a theft*

*charge, so I think they have left no choice for you except to find him not guilty of everything."*
(Emphasis added.)

The jury convicted appellant of robbery.

By the time appellant appeared for sentencing on April 20, 1989, defense counsel had discovered *Hook v. State* and argued that the court had erred in allowing the State to *nol pros* the two lesser included offenses. He acknowledged that he had not "objected in this case because I was under the impression that the State could nol-pros whatever they wanted...." The court, regarding *Hook* as "an abrupt change in the law," decided to overlook the lack of an objection but nonetheless denied relief on the basis that the *Hook* doctrine applied only in first-degree murder cases. Appellant was sentenced to five years in prison.

Pursuing his complaint here, appellant seeks to excuse his failure to object to the *nol pros* on the basis that (1) *Hook* represented "startling new law" of which even the judge was unaware and (2) because a motion for reconsideration had been filed in *Hook*, the actual mandate in that case was stayed until the motion was resolved on April 11, 1989, and thus *Hook* was not even part of the Maryland law at time of trial.

*Hook* began as a capital punishment case. The defendant was charged with murder, armed robbery, and handgun offenses. At the close of the State's case, and over Hook's objection, the State *nol prossed* the lesser included offense of second-degree murder. The trial court overruled the objection and, consistent with that ruling, refused to instruct the jury on second-degree murder or permit counsel to argue that issue. The jury convicted Hook of first-degree murder, armed robbery, and handgun offenses. Following a sentencing hearing, however, the jury rejected the death penalty, whereupon Hook was sentenced to life imprisonment. On appeal, he pressed his complaint that the trial court erred in allowing the State to *nol pros* the second-degree murder charge.

The Court of Appeals agreed that the trial court had erred. It is important, however, for purposes of this case, to examine the basis of the Court's decision.

The Court began by acknowledging that the entry of a *nol pros* is " '*generally* within the sole discretion of the prosecuting attorney, free from judicial control and not dependent upon the defendant's consent.' " 315 Md. at 35, 553 A.2d 233 (quoting *Ward v. State*, 290 Md. 76, 83, 427 A.2d 1008 (1981)) (emphasis added). Also citing *Ward*, as well as *United States v. Batchelder*, 442 U.S. 114, 124–25, 99 S.Ct. 2198, 2204–05, 60 L.Ed.2d 755 (1979), however, the Court observed that this power "is not absolute" or "without restraint." 315 Md. at 36, 553 A.2d 233. In particular, the Court recalled its footnote in *Ward* that " '[t]here is authority ... suggesting that the court may or may not permit the entry of the nolle prosequi in order to prevent injustice.' " *Id.* (quoting *Ward*, 290 Md. at 83 n. 6, 427 A.2d 1008).

From that base, the *Hook* Court then discussed four Supreme Court cases, none of which involved a *nol pros*. *See* 315 Md. at 38–41, 553 A.2d 233.

In *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), the issue was whether an Indian charged under the Major Crimes Act of 1885 (18 U.S.C. §§ 1153, 3242) with assault with intent to commit serious bodily injury on an Indian reservation was entitled to a jury instruction on simple assault. Assault was, of course, a lesser included offense but it was one that was not enumerated in the Major Crimes Act and thus, when the accused was an Indian, was subject to resolution by the tribe rather than by the U.S. District Court. The Court nonetheless construed the Act as permitting an instruction on the lesser included offense. It reasoned:

(1) That "[a]lthough the lesser included offense doctrine developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged, *it is now beyond dispute that*

*the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater ...," id.* at 208, 93 S.Ct. at 1995 (emphasis added; footnote omitted);

(2) That the lesser offense instruction was not incompatible with the evidence in the case and, if the defendant had not been an Indian, he would have been entitled to the instruction, *id.* at 208–09, 93 S.Ct. at 1995–96; and

(3) That the Act required that Indians be tried "in the same manner" as other persons committing the same acts. *Id.* at 212, 93 S.Ct. at 1997. With that direction, the Court could not conclude that Congress intended to deprive Indians of the benefit of a lesser offense instruction when any non-Indian charged with the same offense would be entitled to that benefit. *Id.*

The Court finally observed that, although it had never held that the right to a lesser included offense instruction arose under the Fifth Amendment due process clause, a construction of the Act as precluding a lesser offense instruction "would raise difficult constitutional questions." *Id.* at 213, 93 S.Ct. at 1998.

The second and third cases, *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) and *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), involved a peculiar and unique Alabama statute that directly forbade lesser included offense instructions in capital punishment cases. In *Beck,* the evidence warranted an instruction on a form of non-capital murder that was a lesser offense included within the capital charge upon which Beck was convicted; it was not given only because of the statute. Although again eschewing any *general* due process right to a lesser included offense instruction, the Court noted "the nearly universal" allowance of such instructions and concluded that the risk of an unwarranted conviction stemming from a failure to give the instruction "cannot be tolerated in a case in which the defendant's life is at stake."

447 U.S. at 637, 100 S.Ct. at 2389. In *Hopper,* the Court made clear two things: (1) that in a death penalty case, a lesser included offense instruction is required as a matter of due process, but (2) it is *only* required Constitutionally "when the evidence warrants such an instruction." 456 U.S. at 611, 102 S.Ct. at 2053. The evidence in *Hopper* did *not* warrant the instruction, and so there was no error in declining to give it.

In the fourth case—*Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984)—the defendant was charged with capital murder two years and one month after the offense was committed. All non-capital charges were by then barred by Florida's two-year statute of limitations. At the close of the case, the trial court offered to instruct the jury on the lesser included non-capital offenses if the defendant would waive the statute of limitations; the defendant refused and so the court instructed solely on capital murder. The Supreme Court found no fault with that. The goal of the *Beck* rule, it said,

"is to eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence.... Requiring that the jury be instructed on lesser included offenses for which the defendant may not be convicted, however, would simply introduce another type of distortion into the factfinding process."

468 U.S. at 455–56, 104 S.Ct. at 3159–60.

The *Hook* Court's analysis, to that point, left it with the precepts that (1) the court might be authorized to preclude a *nol pros* "in order to prevent injustice" and (2) in capital cases, at least, due process required a lesser included offense instruction if one was requested and if a conviction for the lesser included offense was possible under the law and the evidence. Recognizing that the case before it was no longer a death penalty case, and that the Federal due process clauses therefore did not mandate a lesser included offense instruction, the Court nonetheless extended the limited Constitutional right as a matter of Maryland com-

mon law, using as its rationale the same notion of "fundamental fairness" that underlay the Constitutional right. *See* 315 Md. at 43, 553 A.2d 233.

■ That is what led the Court into considering the *nol pros.* A *nol pros* serves as an abandonment of the charge; it withdraws the charge from the case and thus from consideration by the trier of fact. *Cf. Ward v. State, supra,* 290 Md. 76, 82–83, 427 A.2d 1008; *Curley v. State,* 299 Md. 449, 459–60, 474 A.2d 502 (1984). Thus, whether a lesser included offense is separately and explicitly charged or whether it is tacitly but nonetheless effectively charged as part of a greater inclusive offense (*see Hagans v. State,* 316 Md. 429, 444–46, 559 A.2d 792 (1989)) a *nol pros* of that lesser offense precludes the trier of fact from entering a conviction on it. That, of course, makes any question as to instructions or argument on the lesser offense superfluous; if, under the circumstance of the case, there is a fundamental unfairness in withdrawing from the trier of fact the middle option of convicting on a lesser offense, it is the *nol pros* that creates the unfairness.

Fairness or unfairness, in this context, are not absolutes but are more a matter of perception, circumstance, and trial strategy. In *Beck v. Alabama, supra,* 447 U.S. 625, 100 S.Ct. 2382, the Court said that the ability to convict of a lesser offense, though designed initially to aid the prosecution, "*can* also be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." 447 U.S. at 633, 100 S.Ct. at 2387 (emphasis added).

That it *can* or *may* be advantageous for a defendant to have one or more lesser included offenses before a trier of fact does not mean that it is *always* to his advantage to have *all* such offenses left in the case. There may well be circumstances in which the defendant might earnestly hope that the State will indeed *nol pros* one or more lesser included offenses because he believes that he can create a reasonable doubt as to the flagship offense and thus walk

away with an acquittal.  A *nol pros* in such a circumstance would be entirely fortuitous and a failure to object considered and deliberate.

In tacit recognition of that principle, we suppose, the *Hook* Court did not flat out prohibit the State from *nol prossing* lesser included offenses but directed the trial courts to forbid such action only upon the defendant's objection.  The Court's ruling in that respect is quite clear:

> "When the defendant is plainly guilty of some offense, and the evidence is legally sufficient for the trier of fact to convict him of either the greater offense or a lesser included offense, it is fundamentally unfair under Maryland common law for the State, *over the defendant's objection*, to *nol pros* the lesser included offense.  The same rationale, set out in detail *supra*, that supports the Supreme Court rule supports this view.  In short, it is simply offensive to fundamental fairness, in such circumstances, to deprive the trier of fact, *over the defendant's objection*, of the third option of convicting the defendant of a lesser included offense.  And if the trial is before a jury, the defendant is entitled, *if he so desires*, to have the jury instructed as to the lesser included offense."

315 Md. at 43–44, 553 A.2d 233 (emphasis added).

█ It is with this background that we turn to the case at hand.  First, we summarily reject the circuit court's notion that *Hook* is limited to first-degree murder cases.  There is nothing in the *Hook* Opinion supporting any such conclusion.  Quite the contrary: the Court, applying State common law, extended the fairness concept "to encompass noncapital cases."  315 Md. at 43, 553 A.2d 233.  It did not say "noncapital murder cases," but "noncapital cases," which we take to mean *all* noncapital cases.  Even at the time of the sentencing hearing, then, there was no basis for the court's restricted reading of *Hook*.  That is now absolutely beyond dispute.  *See Fairbanks v. State*, 318 Md. 22, 566 A.2d 764 (1989).

The issue then is whether the lack of objection can be excused in this case. We believe that it cannot.

We appreciate the fact that neither judges nor lawyers can reasonably be expected to become instantly aware of the content and import of every appellate opinion immediately upon the filing of the slip opinion. The news coverage of appellate courts is not that extensive. We do not fault defense counsel, the judge, or the prosecutor for being unaware of the *Hook* Opinion on March 15, 1989. The Opinion did not appear in even the advance sheets of the Maryland Reports until March 24, 1989. But, as we have observed, although *Hook* certainly represented an extension of the law, it was not so radical or startling a departure as counsel or the court imagined. The seeds of it have been around for a decade or more. If indeed counsel believed that the State's ploy was fundamentally unfair, he could have said so and objected, as Mr. Hook's attorney did. The record suggests that counsel did *not* regard the *nol pros* as unfair, but merely "very interesting." Indeed, as we noted, he attempted to use the *nol pros* to appellant's advantage in his closing argument, urging that, as the State chose not to go forward on the theft charge, "they have left no choice for you except to find [appellant] not guilty of everything."

We are unprepared to ignore the twice repeated caveat in *Hook* that the limitation on the right of the State to *nol pros* applies only where the defendant objects. For that reason, we shall affirm.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.