600 A.2d 409

Thomas Kenneth DEAN

v.

STATE of Maryland.

No. 27, Sept. Term, 1991.

Court of Appeals of Maryland.

Jan. 17, 1992.

Diane G. Goldsmith, Assigned Public Defender (Edward J. Weber, Assigned Public Defender, both on brief), Baltimore, for petitioner.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

Petitioner, Thomas Kenneth Dean, was convicted by a jury in the Circuit Court for Cecil County of attempted murder in the second degree and was sentenced to 30 years imprisonment. In an unreported opinion, the Court of Special Appeals affirmed that judgment. We granted Dean's petition for certiorari to consider the following issues:

1. Whether the trial court erred in permitting the State to enter a *nolle prosequi* to the charge of assault with intent to disfigure.

2. Did the trial court err in refusing to instruct the jury regarding the elements of the crime of assault with intent to disfigure.

Because we perceive no error in the trial court's rulings, we shall affirm the judgment of the intermediate appellate court.

I.

Dean and his wife, Patsy Dean, were married in 1977. During their marriage, the parties separated on several occasions. The most recent separation occurred in September, 1988, at which time Dean and his wife sold their jointly owned property, and Mrs. Dean moved to a new address.

About a week before Thanksgiving in 1988, Mrs. Dean began dating Noble McCoy. Mrs. Dean alleged that on November 24, 1988, her husband accosted her outside the home of Noble McCoy and threatened to kill her. As a result of this encounter, Mrs. Dean filed a complaint against her husband with the Elkton Police Department.

On December 10, 1988, Dean entered the Perfect Touch Styling Salon, a business owned and operated by his wife. Shortly thereafter, Mrs. Dean began screaming. According to the testimony of Stephanie Hamilton, the owner of the

Sun–Less Tanning Salon, which adjoined Mrs. Dean's salon, Mrs. Dean ran into the tanning salon screaming, "Don't let him burn me." Dean was running closely behind his wife and succeeded in cornering her. Dean then took a cigarette lighter from his pocket and waved it in front of his wife's face. That lighter did not work, so Dean produced a second lighter which he used to ignite the gasoline he had previously poured on his wife. Mrs. Dean's clothing immediately caught on fire, and Dean left the premises. At that point, a customer emerged from a tanning booth, wrapped Mrs. Dean in a jacket, and extinguished the fire. Mrs. Dean suffered severe burns about her upper body which required her hospitalization until December 21, 1988.

Dean was indicted for assault with intent to murder (Count 1), attempted murder (Count 2), assault with intent to disfigure (Count 3), assault and battery (Count 4), and assault (Count 5). Before jury selection began at the outset of Dean's trial, the State was permitted, over Dean's objection, to enter a *nolle prosequi* with respect to the charges of assault with intent to murder, assault with intent to disfigure, and assault, leaving only the charges of attempted murder and assault and battery to be litigated.

At trial, Mrs. Dean testified that Dean entered her beauty shop and threw some liquid on her face and back. She then recounted the chase that ensued which culminated in Dean cornering her in the tanning salon and igniting the liquid. During the trial, testimony was also presented regarding an incident that occurred approximately six months prior to the December 10, 1988 incident in which Dean suffered severe burns while painting a lawn mower. The lawn mower was located next to a kerosene heater upon which Dean had placed a can of spray paint. The spray paint can subsequently exploded. Dean was badly burned, and was left facially scarred. Dean's burns also required the routine application of medication on his back. Several marital arguments arose concerning his wife's refusal to assist Dean in applying his medication, and as a result Dean became depressed.

At the close of all the evidence, Dean requested that the jury be instructed regarding the elements of assault with intent to disfigure. Dean was concerned that, given the choice between attempted murder and battery, the jury would convict him of attempted murder even if it believed that he merely intended to disfigure Mrs. Dean. The court refused to give the instruction, but it did instruct the jury regarding the elements of attempted murder and stressed that attempted murder, in either the first degree or the second degree, requires the specific intent to kill and not just to disfigure. Dean's counsel emphasized this requirement of specific intent during his closing argument to the jury, as did the court in responding to the jury's request for clarification of the distinction between attempted murder in the first degree and attempted murder in the second degree. The jury subsequently convicted Dean of attempted murder in the second degree.

## II.

■ Under Maryland Rule 4–247(a), a State's Attorney "may terminate a prosecution on a charge and dismiss the charge by entering a *nolle prosequi* on the record in open court." As this Court noted in *Hooper v. State*, 293 Md. 162, 168, 443 A.2d 86, 89 (1982), "[a] *nolle prosequi* is simply the prosecution's abandonment of a charging document, count or part of a count.... [It] need not be couched in any particular language or take any specific form; it is the substance of the prosecutor's action which controls." *See also Kinder v. State*, 81 Md.App. 200, 207, 567 A.2d 172, 175 (1989).

Dean contends that the trial court committed reversible error in permitting the State to enter a *nolle prosequi* with respect to the charge of assault with intent to disfigure.[1] The central issue in the case was Dean's intent at the time

---

1. Dean did not challenge on appeal the State's *nol pros* of Count 1, charging assault with intent to murder, or Count 5, charging simple assault.

he set his wife on fire. Dean argues that because evidence was presented at trial which would have supported the lesser related offense of assault with intent to disfigure, the trial court should have disallowed the State's *nol pros* of that count. Dean maintains the withdrawal of this charge left the jury with the choice to convict Dean of either attempted murder or assault and battery. This choice, Dean argues, was really no choice at all given the facts of the case and rendered the trial fundamentally unfair.

To support his claim Dean relies primarily on this Court's decision in *Hook v. State*, 315 Md. 25, 553 A.2d 233 (1989), and its progeny.[2] In *Hook*, we acknowledged the rule that "the entry of a *nolle prosequi* is generally within the sole discretion of the prosecuting attorney, free from judicial control and not dependent on defendant's consent." *Id.* at 35, 553 A.2d at 238, *citing Ward v. State*, 290 Md. 76, 83, 427 A.2d 1008, 1012 (1981). We also decided, however, that this power "[wa]s not absolute" or "without restraint".[3] *Id.* at 35–36, 553 A.2d at 238 (citations omitted). Specifically, we held that the authority of the prosecutor to *nol pros* a charge must be tempered in certain circumstances in order to prevent a situation in which the State's entry of a *nolle prosequi* forces the fact finder into the untenable position of either convicting a defendant, obviously guilty of some offense, of the most serious charge or acquitting him:

"When the defendant is plainly guilty of some offense, and the evidence is legally sufficient for the trier of fact to convict him of either the greater offense or lesser included offense, it is fundamentally unfair under Mary-

---

**2.** *See Jackson v. State*, 322 Md. 117, 586 A.2d 6 (1991); *Fairbanks v. State*, 318 Md. 22, 566 A.2d 764 (1989); *Kinder v. State*, 81 Md.App. 200, 567 A.2d 172 (1989); *Cf. Echols v. State*, 82 Md.App. 594, 573 A.2d 44 (1990), *cert. denied*, 320 Md. 800, 580 A.2d 218 (1990).

**3.** In particular we recalled our footnote in *Ward* that " '[t]here is authority ... suggesting that the court may or may not permit the entry of the *nolle prosequi* in order to prevent injustice.' " *Hook, supra*, 315 Md. at 36, 553 A.2d at 239 (*quoting Ward, supra* 290 Md. at 83 n. 6, 427 A.2d at 1012 n. 6).

land common law for the State, over the defendant's objection, to *nol pros* the lesser included offense. . . . In short, it is simply offensive to fundamental fairness, in such circumstances, to deprive the trier of fact, over the defendant's objection, of the third option of convicting the defendant of a lesser included offense."

*Id.* at 43–44, 553 A.2d at 243.

Dean asks us to extend the rationale of *Hook* to the facts of the instant case where the challenged *nol pros* involves a lesser *related* offense rather than a lesser *included* offense. He argues that the State's *nol pros* of the assault with intent to disfigure count fatally infected the trial by sabotaging the defense; consequently, he asserts that the trial court's dismissal of the charge constituted reversible error. We disagree.

The circumstances in *Hook* were significantly different from those in the case *sub judice.* In *Hook*, the defendant was charged with, and in fact admitted to, murdering two persons and committing related offenses. At the close of the evidence, the State entered a *nolle prosequi* to all counts but first degree premeditated murder. During the trial, evidence had been presented from which the jury could have reasonably found that the defendant was so intoxicated that he lacked the capacity to form the specific intent necessary to commit premeditated murder. In light of this evidence, the defendant objected to the *nolle prosequi* of the lesser included offense of second degree murder.

■ Based on these facts, we held that the *nol pros* of the second degree murder charge did deny the defendant a fair trial. We did not, however, pronounce a blanket rule that all lesser included offenses which are legally supported by the evidence could never be *nol prossed.* Instead, we called for a case-by-case evaluation to determine whether under the particular circumstances of a case the *nol pros* of a charge would contravene fundamental fairness. With regard to fundamental fairness, we cautioned:

" 'In order to declare a denial of [fundamental fairness, the reviewing court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevent a fair trial....' "

*Id.* at 36–37, 553 A.2d at 239 (quoting *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941)).

Since our decision in *Hook*, we have addressed the scope and application of the so-called *Hook* exception in two cases; *Jackson v. State*, 322 Md. 117, 586 A.2d 6 (1991), and *Fairbanks v. State*, 318 Md. 22, 566 A.2d 764 (1989). In both cases we emphasized that the exception applies *only when the dictates of fundamental fairness require it. Jackson, supra*, 322 Md. at 120–23, 586 A.2d at 7–9; *Fairbanks, supra*, 318 Md. at 25–27, 566 A.2d at 765–767 (emphasis added). Furthermore, our decisions in *Jackson* and *Fairbanks* only examined the so-called *Hook* exception in the context of lesser *included* offenses. In neither of these two cases did we suggest that the exception should be expanded to include the *nol pros* of counts that are *not* lesser included offenses of those counts which go to the jury.

In *Fairbanks, supra*, the defendant was charged with burglary (Count 1); misdemeanor breaking and entering (Count 2); felony daytime housebreaking (Count 3); and theft (Count 4). Immediately prior to the case's submission to the jury, the prosecutor entered a *nolle prosequi* to Counts 2 and 4. Fairbanks objected to the *nolle prosequi* of the misdemeanor breaking and entering charge (Count 2), arguing that he had a right to have that lesser included offense submitted to the jury. The trial judge overruled the objection, stating that the prosecutor had the absolute right to enter the *nolle prosequi*, although the trial judge permitted Fairbanks to argue to the jury that Count 2 was a lesser included offense of burglary. Holding that the trial judge had committed reversible error, we reasoned:

"The entry of the nolle prosequi over the defendant's objection in this case foreclosed the possibility of a guilty verdict of less than burglary. The jury had the singular choice of convicting Fairbanks of burglary under Counts 1 or 3, or finding him not guilty of any crime. In the circumstances, we think the refusal of the trial court to permit the lesser included offense of misdemeanor breaking and entering to go to the jury was prejudicial error under the fundamental fairness concepts delineated in *Hook* that deprived Fairbanks of a fair trial."

*Fairbanks, supra,* 318 Md. at 26–27, 566 A.2d at 766.

In *Jackson, supra,* the defendant was charged with possession of cocaine with the intent to distribute (Count 1), possession of cocaine (Count 2), conspiracy to distribute cocaine (Count 3), conspiracy to possess cocaine with the intent to distribute (Count 4), and conspiracy to possess cocaine (Count 5). At the close of all the evidence, the State entered a *nolle prosequi* to Counts 2 and 5 focusing on possession. The defense objected, arguing that the *nol pros* of the two lesser included charges denied the jury the third option of convicting the defendant of simple possession and of conspiracy simply to possess. The trial judge overruled the defendant's objection.

During the trial the defense presented no evidence at all suggesting Jackson's criminal involvement was at a level below an intent to distribute the cocaine. Also, the prosecution's evidence did not indicate that Jackson merely possessed the cocaine without the intent to distribute it. Jackson was found guilty on all three remaining counts. Since there was no rational basis upon which the jury could have found Jackson guilty of the lesser included offense of possession but not the greater offense of possession with intent to distribute, we held that fundamental fairness was not violated by the *nol pros* of the two possession counts. *Id.* at 126–27, 586 A.2d at 10.

In the instant case, unlike *Hook, Jackson,* and *Fairbanks,* the challenged *nol pros* involves a lesser *related* offense, not a lesser *included* offense. Dean does not

contend, nor can he, that assault with intent to disfigure is a lesser included offense of attempted murder; clearly they are separate and distinct crimes. Assault with intent to disfigure requires the specific intent to disfigure whereas attempted murder requires the specific intent to kill. *See State v. Earp,* 319 Md. 156, 164, 571 A.2d 1227, 1231 (1990); *State v. Jenkins,* 307 Md. 501, 515, 515 A.2d 465, 472 (1986). Therefore, we hold that the limitation placed on a prosecutor's authority to *nol pros* a charge set forth in *Hook* and *Fairbanks* is not applicable.

### III.

Dean's second contention is that the trial court committed reversible error by refusing to instruct the jury on the crime of assault with intent to disfigure. Dean argues that since there was conflicting evidence presented at trial as to his intent when he set his wife on fire he was entitled to have the jury so instructed.

The law governing a trial court's duty to give instructions requested by a party in a criminal case is well established. Under Maryland Rule 4–325(c):

"The court may, and at the request of any party shall, instruct the jury as to the *applicable law* and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. *The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.*" (emphasis added).

Therefore, if requested to do so, a trial court must give instructions which are fairly supported by the evidence. *Binnie v. State,* 321 Md. 572, 582–83, 583 A.2d 1037, 1041–42 (1991); *Sims v. State,* 319 Md. 540, 550, 573 A.2d 1317, 1321–22 (1990); *Smith v. State,* 302 Md. 175, 179, 486 A.2d 196, 198 (1985). Trial courts, however, are not required to give requested instructions if the matter is fairly covered by the instructions actually given. *Hunt v. State,* 321 Md.

387, 442, 583 A.2d 218, 245 (1990), *cert. denied,* —— U.S.
——, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991) (quoting from
*Mack v. State,* 300 Md. 583, 592, 479 A.2d 1344, 1348 (1984);
*Krauss v. State,* 82 Md.App. 1, 7, 569 A.2d 1284, 1287, *cert.
granted,* 320 Md. 87, 576 A.2d 220 (1990), and *vacated* 322
Md. 376, 587 A.2d 1102 (1991); *Fowler v. State,* 79 Md.App.
517, 530, 558 A.2d 446, 452, *cert. denied,* 317 Md. 392, 564
A.2d 406 (1989); *Jackson v. State,* 69 Md.App. 645, 660, 519
A.2d 751, 758, *cert. denied,* 309 Md. 325, 523 A.2d 1013
(1987).

▊ Applying these principles to the facts of the instant
case, we hold the trial court did not abuse its discretion in
refusing to instruct the jury on the crime of assault with
intent to disfigure. Since the State had entered a *nolle
prosequi,* the charge of assault with intent to disfigure was
not before the court. Consequently, it was not incumbent
on the judge to give an instruction under Md. Rule 4–325(c).
Moreover, the actual instructions given to the jury fairly
covered Dean's requested instruction.

At the close of the evidence at the trial, Dean requested
that the trial court give the following instruction:

"# 2 [In] order to convict the Defendant, the State must
prove:

(1) that the Defendant committed an assault upon the
alleged victim;

(2) that the Defendant intended to maim, disfigure or
disable; and

(3) that it was committed without justification, excuse
or mitigation.

"The term 'maim' means to cripple or inflict an injury
that deprives the victim of the effective use of any limb
or member of the body. The term 'disfigure' has its
common ordinary meaning. The term 'disable' means to
incapacitate or physically impair the alleged victim."

Although the trial court rejected Dean's request, it did
stress in its instructions to the jury that in order to find
Dean guilty of the crime of attempted murder, in either the

first or second degree, they must find that Dean intended to kill his wife, and that any lesser intent—*i.e.* an intent to disfigure—would not suffice. The trial court's instruction on this point related:

"[M]urder is the killing of another person with the specific intent to kill. That is, one, I intended to kill the person. I don't intend to maim him, I don't intend to harm him, I don't intend to disfigure him, I specifically intend to kill this person. For murder, you have to have the intent to kill."

The trial court reinforced the distinction between the intent to kill and the intent to disfigure when, during its deliberations, the jury asked for further instruction regarding the difference between attempted murder in the first and second degree. The trial court prefaced its response by again highlighting the intent issue:

"Attempt is basically where someone intends to kill; in this case not to disfigure, not to maim, not to disable, but they intend to kill. A person has to intend to kill, and not anything else.

"If they intend to harm or something, or unlawfully touch, and you believe that that was the intent, you're only concerned with that, and that would be battery."

Therefore, in light of the trial court's instruction and re-instruction underscoring the distinction between the intent to kill and the intent to disfigure, we hold that Dean's requested instruction was fairly covered, and under Md. Rule 4–325(c) the trial court was not required to grant Dean's request.

Finally, in contrast to the facts in *Hook,* where this Court found fundamental unfairness in the trial court's refusal to permit defense counsel to argue to the jury that his client's offense was one not before the jury, Dean's defense counsel fully argued that if Dean committed any crime, it was assault with intent to disfigure. In his closing argument Dean's defense counsel urged that:

"The State charged the defendant in this case, Mr. Dean, with attempted murder in the first degree, attempted murder in the second degree, and battery.

"The State, under Article 27, which is the Criminal Code of this State, could have brought the charge of assault with intent to maim under Section 386. There is a crime in this State to commit an assault with the intention of disabling them, disfiguring them, or maiming them.

"The State's Attorney is the sole determiner of which charge is brought before you twelve people of this community. The State decided they were not going to bring that charge. The State decided they were going to go for the big charge, attempted murder charge.

"They have elected, by their actions, to prevent you from deciding if Mr. Dean's real intention in this case was to in fact maim Mrs. Dean on that particular date, to disfigure her, or to disable her. They took that decision out of your hands.

"The judge can't do anything about it, you twelve people can't do anything, I can't do anything about it, but the legislature, in its wisdom, has made a crime for those persons who intend to maim, injure, or disable someone, a crime that is different from attempted murder, a crime that requires a different state of mind, a different intent.

"Now I would submit to you that the State did this deliberately, because the State wants the bigger crime, what they consider to be the more important crime, and yet if someone is alleged to have committed a robbery you don't charge them with burglary later. If you think they committed a burglary you don't charge them with robbery.

"What makes our system of justice work is that you bring a charge if you have evidence of that charge and you prove that charge. You don't turn around and box the defendant in by saying, okay, that may be the most logical charge in this case, but I'm not going to give you twelve people the right to listen to the evidence and to apply the evidence to that law. But as the court has told

you in its instructions, if you find that Mr. Dean's intention on that day was to maim Mrs. Dean, then you must find him not guilty of attempted murder in the first degree and attempted murder in the second degree." Under these circumstances, the trial court's refusal to instruct the jury on the crime of assault with intent to disfigure was not error.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER

Dissenting opinion by ROBERT M. BELL, J.

ROBERT M. BELL, Judge, dissenting.

Despite the issue being squarely presented, this Court declines the petitioner's invitation to expand its holding in *Hook v. State*, 315 Md. 25, 553 A.2d 233 (1989), and its progeny, *e.g., Fairbanks v. State*, 318 Md. 22, 566 A.2d 764 (1989), to a case involving a lesser, separate, but related, offense. I believe that, in some circumstances, the *nolle pros* of a lesser related offense presents an issue of fundamental fairness with equal, if not greater, force [1] than, as in *Hook* and *Fairbanks*,[2] the *nolle pros* of a lesser included

---

1. In *Hook v. State*, 315 Md. 25, 41–44, 553 A.2d 233, 243 (1989), a capital case, the Court prohibited, in capital and non-capital cases, as fundamentally unfair, the *nolle pros,* over the defendant's objections, of lesser included offenses when to do so would have presented the jury with an all-or-nothing choice; *Fairbanks v. State*, 318 Md. 22, 26–27, 566 A.2d 764, 766 (1989) reiterated that the *Hook* rationale extended to non-capital cases.

2. In *Echols v. State*, 82 Md.App. 594, 604 n. 6, 573 A.2d 44, 49 n. 6 (1990), I noted that "the rationale on which *Hook* rests gives rise to an interesting and somewhat difficult policy issue"—the extent to which the *Hook/Fairbanks* rationale should be applied to cases involving lesser, separate, but related offenses. The facts in *Echols* were, to my mind, illustrative of the kind of case in which application of that rationale should apply. Thus, I wrote:

    Here, the State charged appellant with both distribution and, though not lesser included, possession of cocaine. Moreover, it produced evidence tending to establish both offenses: One of its witnesses testified that appellant was in the van smoking cocaine with him and others and, hence, in possession of cocaine. Appellant admit-

offense. Because I believe the circumstances *sub judice* present just such a case and, in fact, are more egregious than those addressed in either *Hook* or *Fairbanks*, I respectfully dissent.

The cornerstone of the *Hook/Fairbanks* rationale is "fundamental fairness". Moreover, it is straightforward. A prosecutor's right to *nolle pros* counts of an indictment, free from judicial control or restraint depends upon the fairness, or unfairness, of his or her exercise of the right, *i.e.*, whether it results in an injustice. *Hook,* 315 Md. at 36, 553 A.2d at 239; *Fairbanks,* 318 Md. at 25, 566 A.2d at 766. Furthermore, a defendant's right to a fair trial is superior to, and thus prevails over, a prosecutor's right to *nolle pros* charges against that defendant. *Hook,* 315 Md. at 36, 553 A.2d at 239, citing and quoting *Crawford v. State,* 285 Md. 431, 451, 404 A.2d 244, 254 (1979). Consequently, "... under the concept of fundamental fairness with respect to a trial in a criminal cause, the broad authority vested in a prosecutor to enter a nolle prosequi may be fettered in the proper circumstances. A case-by-case evaluation is necessary." 315 Md. at 37, 553 A.2d at 239. The underpinning of the *Hook/Fairbanks* characterization of the *nolle pros* of lesser included offenses as fundamentally unfair is found in *Keeble v. United States,* 412 U.S. 205, 213, 93 S.Ct. 1993, 1998, 36 L.Ed.2d 844, 850 (1973); *Beck v. Alabama,* 447 U.S. 625, 633, 100 S.Ct. 2382, 2387, 65 L.Ed.2d 392, 400 (1980); *Hooper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049,

---

ted that he was. To be sure, other evidence was produced tending to establish that appellant distributed cocaine and indeed, it was that aspect of the case upon which the State primarily relied. There was, therefore, evidence supportive of both charges. The jury could have resolved the credibility issue inherent in the first count, distribution, in favor of appellant, but found, based upon appellant's admission and the other evidence on the issue, that he possessed cocaine. The evidence thus supported the instruction, not only on distribution of cocaine, but on possession of cocaine as well. As in the case of the lesser included offense scenario, the jury was faced with the same all-or-nothing proposition that Hook found objectionable.
*Id.*

2052, 72 L.Ed.2d 367, 373 (1982); and *Spaziano v. Florida*, 468 U.S. 447, 454, 104 S.Ct. 3154, 3159, 82 L.Ed.2d 340, 348 (1984). That underpinning is, in the words of *Keeble*, upon which the other cases build, "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." (Emphasis in original). 412 U.S. at 212–213, 93 S.Ct. at 1998, 36 L.Ed.2d at 850. In short, the aim of fundamental fairness is the elimination of "the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice...." *Spaziano*, 468 U.S. at 455, 104 S.Ct. at 3159, 82 L.Ed.2d at 349.

This case presents a graphic and egregious example of the unfair use of the power to *nolle pros.* Here, the only issue before the trial court was petitioner's intent. While not explicitly conceding criminal agency during the trial, that concession was made during closing argument by petitioner's counsel, who argued only that petitioner did not intend to kill his wife. At trial, petitioner did not take the stand and acknowledge that he set his wife afire, but neither did he attempt to refute the rather substantial evidence presented by the State identifying him as the person who did so. Petitioner's defense raised, *albeit* by means of circumstantial evidence, only the intent with which he acted. Thus, his only witness, his brother, testified that petitioner had been severely burned in an accident and recounted petitioner's frustration at being unable to obtain the assistance needed to apply his medication properly. In addition, that witness testified that petitioner had ready access to firearms, implying that, had he wished to kill the victim, he could easily have shot her.

Not only was the issue of the intent with which petitioner acted the only one presented to the jury, but the case for finding that petitioner acted only to maim or disfigure the victim was more than simply plausible, it was substantial. Indeed, the facts presented were more consistent with the petitioner having acted with the intent to maim or disfigure than with the intent to murder. The petitioner having all

but conceded committing a criminal act, it was fundamentally unfair of the State to deny the jury the opportunity to assess with what intention petitioner really acted, in the context of an actual controversy, and to make meaningful choices with respect thereto. And, in fact, denying the jury a meaningful choice appears to be the sole reason that the assault with intent to maim or disfigure count was *nolle prossed.*

Petitioner's counsel stated the situation very clearly in closing argument: the State made the practical decision to force the jury into the all-or-nothing situation, to choose between attempted murder and assault and battery, an offense which is for most people, a rather minor one; the State sought "the bigger crime, what they considered to be the more important crime." And counsel was also correct in suggesting to the jury that, in effect, the State "box[ed] the defendant in by saying, okay, that may not be the most logical charge in this case, but I'm not going to give you twelve people the right to listen to the evidence and apply the evidence to that law."

The effect of the State's actions was aptly summed up by petitioner in his brief:

The wrongful dismissal of the crime placed the jury in a Hobson's choice. Petitioner's clear guilt of some serious aggravated assault could not be ignored by the jury; the chasm separating the remaining crimes of attempted murder and battery represented no choice at all. Faced with Petitioner's assaultive behavior, no jury under these circumstances could justify a conviction for mere battery or acquit Petitioner of serious criminal misconduct. Where injustice results from the State's *nolle prosequi* of a less serious aggravated charge and the only issue is the defendant's specific intent at the moment he committed the crime, the dismissal fatally infects the proceedings by sabotaging the defense.

I agree totally.

There simply is no meaningful difference between the injustice which resulted from the State's action in this case

and that we found abhorrent in *Hook/Fairbanks*. In point of fact, the injustice here is much more egregious. Because the State acted in such a manner as to deny petitioner a fair trial, it would be fundamentally unfair to permit the judgment to stand. Accordingly, I would reverse and remand for a new trial. At that trial, the State would be precluded from *nolle prossing* the lesser, separate, but related, offense of assault with intent to maim or disfigure.[3]

---

**3.** I am also troubled by the court's refusal to instruct the jury on the crime of assault with intent to maim or disfigure. The majority correctly points out that, the court having permitted the *nolle pros*, the charge of assault with intent to maim or disfigure was not before the court. Nevertheless, I do not agree that it was not incumbent upon the court, upon request, to instruct the jury on that charge.

The majority acknowledges that the petitioner was properly allowed to argue that he was not guilty of attempted murder, only assault with intent to maim or disfigure. Thus, the court recognizes the necessity to a fair trial that the jury understand the parameters of each of those offenses so as to be able meaningfully to assess the petitioner's guilt. By instructing the jury as to attempted murder, and only implying, rather than explicating, the elements or the definition of assault with intent to maim or disfigure, however, the court placed its imprimatur on only one of the charges, thus giving that charge greater weight in the eyes of the jury. That the petitioner's counsel argued that the offense petitioner committed was assault with intent to maim or disfigure did not change the perception of the jury that the offenses were on different planes. Where, as in the instant case, the *nolle pros* of a charge by the State deprives the jury of the opportunity to choose between two crimes clearly presented by the evidence and, indeed, where the one *nolle prossed* is the more logically supported by the evidence, at the very least, the petitioner should be given the benefit of having the court instruct the jury on both charges. It is not enough for the court to stress the intent required for proof of attempted murder; it must also define the intent, in the context of the competing charge, that will not suffice.