REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 563

September Term, 2013

STATE OF MARYLAND

v.

ZENNO SMITH, III

Nazarian,
Leahy,
Thieme, Raymond G., Jr.
 (Retired, specially assigned),

JJ.

Opinion by Thieme, J.

Filed: May 27, 2015

Following a jury trial on January 6-8, 2009, Zenno Smith, III, appellee, was convicted of first-degree felony murder, first-degree burglary, and possession of a handgun after having been convicted of a felony. He was sentenced to life imprisonment for the murder conviction and a consecutive term of five years for possession of a handgun. The burglary conviction was merged for sentencing purposes. Smith's convictions were affirmed by this Court in an unreported opinion, *Zenno Smith, III v. State*, No. 184, Sept. Term 2009 (filed September 29, 2010). Smith filed a petition for writ of certiorari that was denied by the Court of Appeals. *See Smith v. State*, 417 Md. 502 (2011).

Thereafter, Smith filed a petition seeking post-conviction relief. On April 15, 2013, the Circuit Court for Caroline County granted Smith's petition. The State filed an application for leave to appeal, which we granted.

## QUESTIONS PRESENTED

The State presents the following questions for our consideration:

I. Was Smith's trial counsel not legally entitled to have objected to the nolle prosequis?

II. Even if entitled to object, did Smith's counsel have a valid tactical reason for not objecting to the trial judge's granting the nolle prosequi to the second-degree felony murder charge?

For the reasons set forth more fully below, we shall affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

Smith was charged in the Circuit Court for Caroline County with the following crimes arising out of the shooting death of Ronald Gibson on June 15, 2008:

Count 1 - first-degree murder
Count 2 - second-degree murder
Count 3 - first-degree burglary
Count 4 - first-degree assault
Count 5 - second-degree assault
Count 6 - handgun use in the commission of a felony
Count 7 - accessory after the fact to first-degree murder
Count 8 - accessory after the fact to second-degree murder
Count 9 - felon in possession of a firearm

We provided a detailed recitation of the underlying facts in our unreported opinion

on direct appeal, which we include here for ease of reference:

> The evidence adduced at trial revealed the following events leading to Gibson's death. Trooper Derek Carabello, assigned to the Easton Barrack of the Maryland State Police, testified that on June 15, 2008, he responded to a call for a report of a possible shooting at a trailer park in Caroline Acres. When Trooper Carabello arrived at the scene he saw Gibson lying face down just inside the threshold of the doorway to the trailer. Initially, Trooper Carabello detected a faint pulse from Gibson, but later, after searching the trailer for officer's safety, Trooper Carabello found no pulse.
>
> Sergeant Nancy Nagel, assigned to the Caroline County Sheriff's Department, testified that she arrived at the scene shortly after Trooper Carabello, and noticed that the front door, the storm door, and the entry door were both opened and that there was a broken locking latch laying on the deck. Sergeant Nagel stated that in searching the residence, she recovered a long barrel 12 gauge shotgun propped up against a sofa. In checking the gun for safety, Sergeant Nagel indicated that there was no ammunition inside the gun.
>
> Dominique Fountain ("Dominique")[1] testified that on June 14, 2008, his mother, Tonyett Fountain ("Tonyett"), and appellant, who was Tonyett's boyfriend, went to Gibson's mother's home located in Cordova, Maryland

---

[1] Dominique Fountain, who was sixteen years old at the time of this incident, was charged with first-degree murder and agreed to testify pursuant to a plea agreement.

to "get my mom's dog." At that time, Gibson was engaged to marry Tonyett's mother, Denise Fields. Appellant, Tonyett, and Dominique took the dog to their home in Dover, Delaware. According to Dominique, after the retrieval of the dog, Gibson called Tonyett and told her that she was a "bitch" and that, if the dog was not returned, she was not going to "live to see tomorrow."

Dominique stated further that he, Tonyett, and appellant, who was armed with a loaded .45 caliber handgun, drove to Gibson's home in the Caroline Acres trailer park in Henderson, Maryland to make peace with Gibson. During the drive, there were discussions about a gun that Gibson kept in his home. When they arrived, Dominique asked appellant to give him the handgun because he "felt that it would have been more safer with [him] and nothing like that would have happened." Appellant complied and Dominique put the gun in his pants pocket. Dominique admitted that it was unusual for them to take a gun when visiting Gibson.

During cross-examination, Dominique testified that during his interview with police, he told them that at some point, appellant stepped out onto the balcony, but came back inside before Gibson was shot. When asked by defense counsel if Dominique remembered telling the police that appellant "remained outside" when the shot was fired, he answered "[n]o."

Approximately twenty minutes after leaving Gibson's trailer, Dominique and Tonyett were stopped by Corporal Christopher Emerick of the Maryland State Police. At that time, appellant was not in the vehicle. When Dominique exited the vehicle, the handgun he used to shoot Gibson fell from his lap.

Katheryn Holland ("Katheryn"), Gibson's neighbor, testified that immediately before the shooting, she heard loud noises and banging coming from Gibson's trailer. After hearing a gunshot, she looked outside and saw "three people coming out of the residence and stand on [Gibson's] deck," and "[t]hey were all talking and smiling at each other and just conversing for a few minutes there on the deck." After a few minutes, the three people left. Katheryn stated that she was only able to see the faces of two of the people, which she later identified as Tonyett and appellant. Katheryn asked her husband, Richard Holland ("Richard"), to go over to Gibson's trailer and "make sure everything was all right" because she noticed that the door to Gibson's trailer was open. After a few minutes, Richard was "flagging

his arms" and telling her to call 911 because Gibson had been shot.

Richard testified that he went outside and obtained Tonyett's tag number. After appellant, Tonyett and Dominique departed, he entered Gibson's home and discovered that Gibson had been shot but was still alive. Richard stated that he moved the shotgun that was laying across Gibson and tried to make him comfortable. When he asked Gibson who shot you, Gibson told him who was involved in the shooting. Gibson succumbed to his injuries shortly thereafter.

Appellant did not testify or present any witnesses.

Throughout the trial, the State proceeded on the theory of first-degree felony murder based on the statutory felony of first-degree burglary. Smith's defense was that all of the parties had gone to the victim's residence solely for a peaceful encounter with the victim, to talk, and to "mend fences," and that Smith did not "want anything to do with a confrontation, that's not why he was there." At the conclusion of the State's case, and after the court's denial of Smith's motion for judgment of acquittal with respect to the burglary and felony murder charges, the State advised the court that it would enter nolle prosequis for the counts charging second-degree felony murder, first-degree assault, second-degree assault, and use of a handgun in the commission of a felony. The prosecutor commented that those charges were not lesser included offenses of felony murder and that they "could have been presented but . . . they raise an entire spectrum of imperfect third person self defense which will not apply to felony murder and that's the State's reason for, simplifying what is, you know, certainly, honestly a complex although in some ways simple and some ways complex case." Trial counsel did not object to the

-4-

State's request to enter nolle prosequis for the four counts. Subsequently, the State also entered a nolle prosequi as to the charge of accessory after the fact to second-degree murder. Ultimately, Smith was convicted of first-degree felony murder, first-degree burglary, and possession of a handgun after having been convicted of a felony.

Smith sought post-conviction relief, arguing ineffective assistance of trial counsel for the following reasons:

1. At the close of the State's case trial counsel failed to object when the State entered a *nol pros* on the charges of 2nd Degree Murder, 1st Degree Assault, Handgun Use During a Felony or Violent Crime, and Accessory After the Fact to 2nd Degree Murder.

2. Generally, counsel failed to object in order to preserve meritorious issues for appeal.

3. At the beginning of the third day of trial, counsel failed to request dismissal of a juror who may have seen Petitioner in shackles.

4. After the trial, counsel failed to request a review of Petitioner's sentence by a three judge panel.

5. At the pre-trial stage, counsel failed to adequately investigate and prepare his defense.

6. During the voir dire of the jury, counsel failed to object to the Court's failure to ascertain whether the jurors had a handgun bias.

7. During the State's case, counsel failed to present or adequately utilize photographs to impeach the Officer's testimony.

8. At the motion for judgment of acquittal, counsel failed to argue sufficiently and with particularity that burglary was not proven because there had been no breaking.

9. Counsel failed to object that the felony murder jury instruction was

deficient.

10. Counsel failed to request jury instructions for self-defense and imperfect self-defense.

The post-conviction court found that Smith's trial counsel rendered ineffective assistance by failing to object to the State's entry of nolle prosequis for five of the charges against him and, thereby, failing to preserve meritorious issues for appeal. Specifically, the post-conviction court held that the State's entry of nolle prosequis "effectively removed all the counts underlying the second degree felony murder theory of the case and operated to the substantial detriment of [Smith]." The post-conviction court rejected the State's argument that second-degree murder is not a lesser included offense of felony murder, noting that Smith's case did not involve an allegation of second-degree murder of the intent-to-kill variety. The court stated:

> The only possible theory of either first or second degree murder the State could pursue against [Smith] would be *felony* murder. The State's theory of first degree felony murder was predicated on first degree burglary, which required intent to commit first degree assault, the only crime of violence outlined in Section 14-101 [of the Criminal Law Article][2] applicable to this case. First degree assault would however have also supported a conviction for second degree felony murder.

(Internal footnote omitted). The court concluded that if trial counsel had objected on this issue, the second-degree felony murder charge might have reached the jury and the

---

[2]  Section 14-101 of the Criminal Law Article identified assault in the first degree as a crime of violence. *See* Md. Code (2002, 2008 Supp.), §14-101(a)(19), of the Criminal Law Article ("CL"). At all times relevant to the instant case, the applicable statutory provisions remained substantially unchanged.

verdict might have been different.

Following the grant of post-conviction relief, the State filed an application for leave to appeal, which we granted.

## DISCUSSION

## I.

The State first contends that Smith's trial counsel was not legally entitled to object to the nolle prosequi of the second-degree felony murder charge because it was not a lesser included offense of first-degree felony murder. Alternatively, the State asserts that even if trial counsel was entitled to object to the entry of the nolle prosequis, his election not to do so under the facts of this particular case was "a sound, deliberate strategic decision." We disagree and explain.

### A. Standard of Review

The Sixth Amendment to the United States Constitution guarantees all criminal defendants the right to the assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). Both the United States Supreme Court and the Court of Appeals have recognized that "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970); *Mosley v. State*, 378 Md. 548, 557 (2003). In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish that trial counsel's performance was constitutionally deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687;

*Mosley*, 378 Md. at 557.

In discerning whether counsel's performance was deficient, we start with the presumption that he or she "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *Bowers v. State*, 320 Md. 416, 421 (1990). Our review of counsel's performance is "highly deferential." *Kulbicki v. State*, 440 Md. 33, 46 (2014). We look to whether counsel's "representation fell below an objective standard of reasonableness." *Harris v. State*, 303 Md. 685, 697 (1985). We assess reasonableness as of "the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

To satisfy the prejudice prong of *Strickland*, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The ultimate inquiry is whether "'counsel's errors were so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable.'" *Oken v. State*, 343 Md. 256, 284 (1996)(quoting *Strickland*, 466 U.S. at 687).

Determinations by the post-conviction court regarding ineffective assistance of counsel claims are mixed questions of law and fact. *State v. Purvey*, 129 Md. App. 1, 10 (1998). We will not disturb the factual findings of the post-conviction court unless they are clearly erroneous. *Evans v. State*, 151 Md. App. 365, 374 (2003); *State v. Jones*, 138

Md. App. 178, 209 (2001). We will make our own independent analysis, however, based on our own judgment and application of the law to the facts, of whether the State violated a Sixth Amendment right. *Jones*, 138 Md. App. at 209. Absent clear error, we defer to the post-conviction court's historical findings, but we conduct our own review of the application of the law to the defendant's claim of ineffective assistance of counsel. *Evans*, 151 Md. App. at 374 (citing *Cirincione v. State*, 119 Md. App. 471, 485 (1998)).

## B. Nolle Prosequi

A nolle prosequi is simply the State's abandonment of a charging document, count, or part of a count. *Ward v. State*, 290 Md. 76, 83 (1981). A nolle prosequi may be entered to a degree of an offense. *State v. Ward*, 284 Md. 189, 208 (1978). Maryland Rule 4-247, which governs dispositions by nolle prosequi, provides, in part, as follows:

> (a) **Disposition by nolle prosequi**. The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court. The defendant need not be present in court when the nolle prosequi is entered, but if neither the defendant nor the defendant's attorney is present, the clerk shall send notice to the defendant, if the defendant's whereabouts are known, and to the defendant's attorney of record. Notice shall not be sent if either the defendant or the defendant's attorney was present in court when the nolle prosequi was entered. If notice is required, the clerk may send one notice that lists all of the charges that were dismissed.

As a general rule, the entry of a nolle prosequi is within the sole discretion of the prosecuting attorney, "free from judicial control and not dependent upon the defendant's consent." *Ward*, 290 Md. at 83.

### C. *Hook* and its Progeny

The prosecutor's power to enter a nolle prosequi is not without restraint. *Hook v. State*, 315 Md. 25, 36 (1989)(citing *United States v. Batchelder*, 442 U.S. 114, 124 (1979)). In *Hook*, the Court of Appeals explained that while entry of a nolle prosequi is generally within the prosecutor's sole discretion, that power is not absolute:

> When the defendant is plainly guilty of some offense, and the evidence is legally sufficient for the trier of fact to convict him of either the greater offense or a lesser included offense, it is fundamentally unfair under Maryland common law for the State, over the defendant's objection, to *nol pros* the lesser included offense. ... In short, it is simply offensive to fundamental fairness, in such circumstances, to deprive the trier of fact, over the defendant's objection, of the third option of convicting the defendant of a lesser included offense.

*Hook*, 315 Md. at 43-44.

Hook was charged with the murder of two people and related offenses. *Id.* at 32. At the close of the evidence, the prosecutor entered a nolle prosequi as to the charge of second-degree murder. *Id.* at 35. Evidence was presented at trial that Hook was intoxicated at the time the murders were committed. Had the jury determined that Hook was so intoxicated as to lack the requisite specific intent, a conviction of first-degree premeditated murder would have been precluded. As a result, defense counsel objected to the nolle prosequi arguing that, under the circumstances, the failure to submit the second-degree murder count to the jury was a violation of Hook's due process rights, fundamental fairness, equal protection, and an abuse of prosecutorial discretion. *Id.*

The Court determined that there was evidence to support the charge of second-

degree murder as well as unequivocal evidence that Hook had murdered two individuals.

As a result, the entry of the nolle prosequi left the jury with the "Hobson's choice"[3] to

either convict Hook of first-degree murder or return a verdict of not guilty. *Id.* at 38. The

entry of the nolle prosequi thereby enhanced the risk of an unwarranted conviction and

denied Hook a fair trial. *Id.* at 41-42.

In reaching that conclusion, the Court called for a case-by-case evaluation to

determine whether, under the particular circumstances of a case, the entry of a nolle

prosequi for a charge would contravene fundamental fairness. With regard to

fundamental fairness, the Court cautioned:

> "In order to declare a denial of [fundamental fairness, the reviewing court]
> must find that the absence of that fairness fatally infected the trial; the acts
> complained of must be of such quality as necessarily prevent a fair trail ...."

*Id.* at 36-37 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)).

The *Hook* exception was discussed and applied in *Fairbanks v. State*, 318 Md. 22

(1989). Fairbanks was charged with burglary, misdemeanor breaking and entering, felony

---

[3] "Hobson's choice" refers to the idea that a person either has no choice at all or a choice between two bad options. *Garner's Dictionary of Legal Usage* 410-11 (3rd ed. 2011). The Court of Appeals has recently defined the phrase as the "paradox of an apparently free choice when in reality there is no alternative." *See Simpson v. State*, ___ Md. ___, No. 22, Sept. Term 2014 (filed April 7, 2015)(citing *The New Lexicon Webster's Encyclopedic Dictionary of the English Language* 460 (Bernard S. Cayne ed., Lexicon Publications, Inc. 1990)). The phrase originated from the practice of Thomas Hobson (1549-1631), a livery stable owner in England, who offered customers the choice of either taking the horse in the stall closest to the door or taking none at all. *Garner's Dictionary of Legal Usage, supra,* at 410; *Wilson v. John Crane, Inc.*, 385 Md. 185, 211 n.11 (2005).

daytime housebreaking, and theft. Over objection, the prosecutor entered nolle prosequis as to misdemeanor breaking and entering and theft. In holding that the trial judge committed reversible error, the Court of Appeals stated:

> The entry of the nolle prosequi over the defendant's objection in this case foreclosed the possibility of a guilty verdict of less than burglary. The jury had the singular choice of convicting Fairbanks of burglary under Counts 1 or 3, or finding him not guilty of any crime. In the circumstances, we think the refusal of the trial court to permit the lesser included offense of misdemeanor breaking and entering to go to the jury was prejudicial error under the fundamental fairness concepts delineated in *Hook* that deprived Fairbanks of a fair trial.

*Fairbanks*, 318 Md. at 26-27.

Subsequently, the rule in *Hook* was clarified in *Jackson v. State*, 322 Md. 117 (1991). Jackson was charged with both possession and distribution of cocaine and other charges. *Jackson*, 322 Md. at 123. Several police officers conducting drug surveillance observed Jackson and another man selling cocaine on several occasions and witnessed the exchange of currency and baggies containing a white substance. *Id.* at 125. Over objection, the State entered a nolle prosequi as to the possession charges and Jackson was ultimately convicted of distribution. *Id.* at 123-24.

In the Court of Appeals, Jackson argued that under *Hook* the jury was required to have the option of convicting him of the lesser included offense of possession. *Id.* at 127. In rejecting that argument, the Court acknowledged that Jackson satisfied the first step in the *Hook* test, in that a rational jury could have found him guilty of some offense, and that there was legally sufficient evidence from which a jury could have convicted him of

-12-

possession as well as distribution. But the Court noted that the evidence adduced at trial did not fairly support a conviction on the nol prossed counts. *Id.* at 126. Under these circumstances, the Court agreed with the view expressed in our opinion on the case, that "'it would have been an affirmative nuisance 'to muddy the waters' with unnecessary complications involving intermediate offenses that were only theoretically possible but not realistically plausible.'" *Id.* at 126 (quoting *Jackson v. State*, 82 Md. App. 438, 447 (1990)). The Court clarified the *Hook* test, stating:

> It is clear from our decision of the subject that the test is not simply the existence of legally sufficient evidence [of the lesser included offense]. Even when there is evidence that would support a finding of guilt of the lesser included offense, the State is not precluded from entering a nolle prosequi of that offense if, under the particular facts of the case, there exists no rational basis by which the jury could conclude that the defendant is guilty of the lesser included offense but not guilty of the greater offense.

*Jackson*, 322 Md. at 127-28.

Thus, in considering whether the entry of a nolle prosequi to a lesser included offense is unfair to a defendant, the evidence must be sufficient for the jury to convict on that offense and the evidence must be such that the jury could rationally convict only on the lesser included offense.

In *Dean v. State*, 325 Md. 230 (1992), the Court of Appeals considered whether to extend the *Hook* rule to a case involving a lesser related offense that was not a lesser included offense. Dean was charged with assault with intent to murder, attempted murder, assault with intent to disfigure, assault and battery, and assault, all of which arose

-13-

out of his act of pouring gasoline on his wife and lighting her on fire. *Dean*, 325 Md. at 233. Before jury selection, the prosecutor was permitted, over Dean's objection, to enter nolle prosequis with respect to the charges of assault with intent to murder, assault with intent to disfigure, and assault, leaving only the charges of attempted murder and assault and battery to be litigated. *Id.* at 233.

At the close of all the evidence, Dean asked that the jury be instructed regarding the elements of assault with intent to disfigure. *Id.* at 234. He was concerned that, given the choice between attempted murder and battery, the jury would convict him of attempted murder even if it believed that he merely intended to disfigure his wife. *Id.* The trial court refused to give the instruction and the jury subsequently convicted Dean of attempted murder in the second degree. *Id.*

On appeal, Dean argued that the trial court erred in permitting the prosecutor to enter a nolle prosequi with respect to the charge of assault with intent to disfigure. *Id.* at 234. He asserted that the evidence presented at trial would have supported the lesser related offense of assault with intent to disfigure and that the withdrawal of that charge fatally infected the trial by sabotaging his defense. *Id.* at 236. According to Dean, allowing the nolle prosequi left the jury with the choice of convicting him of either attempted murder or assault and battery and, given the facts of the case, rendered the trial fundamentally unfair. *Id.* at 235.

The Court of Appeals refused to apply the *Hook* exception in Dean's case because

the challenged nolle prosequi involved a lesser related offense, as opposed to a lesser included offense. The Court distinguished Dean's case from *Hook* and other cases, stating:

> In the instant case, unlike *Hook*, *Jackson*, and *Fairbanks*, the challenged *nol pros* involves a lesser *related* offense, not a lesser *included* offense. Dean does not contend, nor can he, that assault with intent to disfigure is a lesser included offense of attempted murder; clearly they are separate and distinct crimes. Assault with intent to disfigure requires the specific intent to disfigure whereas attempted murder requires the specific intent to kill. Therefore, we hold that the limitation placed on a prosecutor's authority to *nol pros* a charge set forth in *Hooks* and *Fairbanks* is not applicable.

*Id.* at 236.

In *Burrell v. State*, 340 Md. 426 (1995), the Court of Appeals again considered whether the entry of a nolle prosequi to a charge of a lesser included crime deprived a defendant the right to a fair trial. Burrell was charged with a number of crimes arising out of the holdup of a gas station, including robbery with a deadly weapon, robbery, theft of $300 or over, theft of under $300 and two handgun offenses. *Burrell*, 340 Md. at 428-29. His defense at trial was that he did not participate in the crime. *Id.* at 429. An eyewitness, who happened to be at the gas station at the time of the holdup, testified that he noticed Burrell standing at a pay phone and watching in all directions. *Id.* at 428. When the eyewitness left the attendant's booth and returned to his own vehicle, he realized that the station attendant was being robbed by two men who had just entered the station. *Id.* The eyewitness drove over to the pay phone where Burrell was standing and

-15-

asked him to call the police. *Id.* Burrell then got into the driver's seat of the vehicle that the robbers had been in and drove off. *Id.* The eyewitness wrote down the license plate number and police traced it back to Burrell, who was eventually arrested. *Id.*

At trial, at the close of the evidence, the prosecutor entered nolle prosequis with respect to the charges of robbery and theft under $300. *Id.* at 429. Burrell was subsequently convicted of robbery with a deadly weapon, theft of $300 or over, and the handgun charges. *Id.* The Court of Appeals considered whether the decision to enter the nolle prosequi to the lesser included charge of robbery, "which left the jury with the 'all-or-nothing' choice of complete acquittal of the robbery charge or conviction on the more serious charge of armed robbery, violated Burrell's common law right to a fair trial." *Id.*

The Court determined that Burrell was not denied his common law right to a fair trial. In reaching that conclusion, the Court emphasized that its "sole task is to review whether the evidence *at trial* supported the trial judge's decision to allow the nolle pros of the robbery charge." *Id.* at 435. The Court noted that Burrell did not present any evidence to disprove the use of a deadly weapon and the only rational inference from the evidence presented at trial was that an armed robbery, not a simple robbery, had been committed. *Id.* The Court concluded that "the evidence at trial rationally supported only two choices: a conviction of accomplice to a robbery with a deadly weapon or acquittal." *Id.* Because there was no evidence supporting a conviction of the lesser included offense of robbery without also convicting him of the greater offense of robbery with a deadly

weapon, the Court held that the entry of the nolle prosequi to the simple robbery charge

was not unfairly prejudicial and did not deny Burrell of his right to a fair trial. *Id.* at 437.

With these cases in mind, we turn to the issue before us.

## D. Lesser Included Offenses

In granting Smith post-conviction relief, the circuit court construed the charges

that were nolle prossed (second-degree felony murder, first and second-degree assault,

and accessory after the fact to second-degree murder) as lesser included offenses of first-

degree felony murder and first-degree burglary, and found, specifically, that under the

facts of this case, first-degree assault was an element of both the first and second-degree

felony murder charges. The State contends that this finding was erroneous because,

under the required evidence test, second-degree murder predicated upon first-degree

assault is not a lesser included offense of first-degree felony murder predicated upon

consummation of a first-degree burglary with the intent to commit a first-degree assault.

The long-standing rule of law to determine whether one offense is included within

another when both are based on the same act or acts is the required evidence test of

*Blockburger v. United States*, 284 U.S. 299 (1932). The Court of Appeals discussed that

test in *Nicolas v. State*, 426 Md. 385 (2012), stating:

> The required evidence test focuses upon the elements of each
> offense; if all of the elements of one offense are included in the other
> offense, so that only the latter offense contains a distinct element or distinct
> elements, the former merges into the latter. Stated another way, the
> required evidence is that which is minimally necessary to secure a
> conviction for each offense. If each offense requires proof of a fact which

-17-

the other does not, or in other words, if each offense contains an element which the other does not, there is no merger under the required evidence test even though both offenses are based upon the same act or acts. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, and where both offenses are based on the same act or acts[,] merger follows.

*Nicolas*, 426 Md. at 401-02. (citations omitted) (quoting *State v. Lancaster*, 332 Md. 385, 391-92 (1993)).

An examination of the relevant crimes in the case at hand is in order. At the outset, we note that a participating felon is guilty of murder when a homicide has been committed by a co-felon. *Campbell v. State*, 293 Md. 438, 442 (1982); *Malik v. State*, 152 Md. App. 305, 330 (2003). Smith was charged with first-degree felony murder, a statutory offense defined as murder committed in the perpetration of or attempt to perpetrate one of the enumerated felonies set forth in CL § 2-201(a)(4), which includes first-degree burglary. Notably, the list of felonies does not include first-degree assault.

Smith was also charged with second-degree felony murder, which is a common law crime defined as murder committed in the perpetration or attempt to perpetrate a felony dangerous to human life but not enumerated in CL § 2-201(a)(4). *Fisher v. State*, 367 Md. 218, 262-63 (2001); *Deese v. State*, 367 Md. 293, 296 (2001). Second-degree felony murder is premised on "the principle that a person participating in a felony is responsible for the natural and probable consequences of his or her criminal activity." *Roary v. State*, 385 Md. 217, 231 (2005). To obtain a conviction for second-degree felony murder, the State must prove the underlying felony and that the death occurred

-18-

during the perpetration of the felony. *Id.* at 227. "[T]he underlying felony must be sufficiently dangerous to life to justify application of the doctrine," so that the jury must be able to find beyond a reasonable doubt that "the felonious conduct, under all the circumstances, made death a foreseeable consequence." *Id.* at 229. It is clear that a murder perpetrated in the commission of a first-degree assault would be a second-degree felony murder.

Smith was also charged with first-degree burglary and first-degree assault. First-degree burglary required proof of the breaking and entering of the dwelling of another with the intent to commit theft or a crime of violence. CL § 6-202; *Winder v. State*, 362 Md. 275, 326 (2001). Under the facts of this case, there was no evidence of theft and the only qualifying crime of violence was the first-degree assault. *See* CL §14-101(a)(19). First-degree assault required proof that Smith intentionally caused or attempted to cause serious physical injury to another or committed the assault with a firearm. CL §3-202.

The State contends that second-degree felony murder is not a lesser included offense of first-degree felony murder. It asserts that a second-degree felony murder based upon a first-degree assault requires the actual commission or attempt to commit the first-degree assault. In contrast, a first-degree felony murder based upon a first-degree burglary, requires only the intent upon entry to commit a first-degree assault and not the commission of the crime itself.

In support of its contention that defense counsel was not entitled to object to the

-19-

State's entry of nolle prosequi for the second-degree felony murder and other charges, the State directs our attention to *Malik v. State*, 152 Md. App. 305 (2003). Malik was charged with a variety of crimes arising out of the murders of five women. *Malik*, 152 Md. App. at 313. The State elected to proceed only on theories of premeditated first-degree murder and felony murder and abandoned possible verdicts of second-degree murder. *Id.* at 330-31. Malik was convicted of first-degree premeditated murder and various conspiracy charges. *Id.* at 313. On appeal to this Court, he argued, among other things, that the trial court erred in refusing to instruct the jury on the theory of second-degree murder. *Id.* We agreed.

In reaching that conclusion, we recognized that "second degree murder is a lesser included offense of first degree premeditated murder," but it is not a lesser included offense of first-degree felony murder. *Id.* at 331-32 (citing *Higginbotham v. State*, 104 Md. App. 145, 152 (1995) and *Hook*, 315 Md. at 30). As the first requirement of *Hook* was satisfied, we examined whether there was a rational basis upon which the jury could have concluded that Malik was guilty of the lesser offense, but not guilty of the greater offense. *Id.* at 333. We concluded that the trial court erred in failing to instruct the jury on second-degree murder because there was evidence to support the conclusion that Malik did not premeditate the murders. *Id.* Under those circumstances, Malik was entitled to an instruction on second-degree murder. *Id.* at 334.

The State asserts that *Malik* is controlling in the instant case because, although it

-20-

determined that the second-degree murder was a lesser included offense of the first-degree premeditated murder conviction, the first-degree felony murder conviction was permitted to stand. We are not convinced.

In the case at hand, the first-degree felony murder charge was predicated on the burglary. The burglary was complete at the time Smith and the others opened the door and entered into Gibson's home with the intent to commit a crime of violence, in this case, first-degree assault. CL § 6-202. Although for a burglary conviction, only an intent to commit first-degree assault was required, in this case, the first-degree assault was actually committed when Gibson was shot. The actual first-degree assault was the predicate for the charge of second-degree felony murder.

In *Yates v. State*, 429 Md. 112 (2012), the Court of Appeals rejected the notion that once the elements of the predicate felony have been accomplished, a subsequent killing does not constitute a felony murder. On the contrary, for purposes of felony murder, a predicate crime such as robbery is treated as continuing beyond completion of the core event. *Yates*, 429 Md. at 126. In *Yates,* the Court explained that the "continuous-transaction approach has the advantage of addressing situations in which a killing is clearly part of an ongoing event stemming from an underlying felony but occurs after the elements of the felony are technically complete." *Id.* at 128.

It is this factual situation that distinguishes the case at hand from *Malik* and from *Dean*, in which the Court of Appeals declined to apply the *Hook* exception to a

prosecutor's entry of nolle prosequi as to a lesser related offense. Here, the assault that was the predicate for the first-degree burglary was also the cause of Gibson's death. It would be fundamentally unfair to say that the assault was sufficiently connected to the burglary so as to make the crime first-degree felony murder, while, at the same time, keeping the jury from having the option of convicting Smith of second-degree felony murder predicated on the very same assault. The assault that caused Gibson's death and formed the predicate for first-degree felony murder is the same assault that formed the predicate of the second-degree felony murder charge. The crimes are so inter-related that principles of fundamental fairness demand that the second-degree felony murder be treated as a lesser included offense in this particular case.

In reaching that conclusion, we are cognizant of the fact that the evidence in this particular case was such that the jury rationally could have convicted Smith only on the second-degree felony murder charge. There was compelling evidence that Gibson was killed as a result of the first-degree assault and there was sufficient evidence presented from which the jury could have concluded that Smith and the others did not break or enter Gibson's home. Dominique Fountain's uncontradicted testimony was that there was no plan to commit an assault on Gibson. Rather, the plan was only to talk to him and mend fences. In addition, the jury could have found that Smith and the others had at least implicit permission to enter Gibson's home. Dominique Fountain testified that he used to stay at the home with his grandmother, who lived with Gibson, and there was evidence

-22-

that Smith and Tonyett Fountain had stayed at the house for some time. Moreover, a jury could infer that Gibson allowed them to enter the home when he turned his back and walked away from the door.

The facts of this case, particularly the inter-connected relationship between the first-degree assault, the first-degree burglary, and the second-degree felony murder charges, convince us that the absence of fairness resulting from the entry of the nolle prosequi infected the entire trial. We hold that trial counsel was legally entitled to object to the entry of nolle prosequi as to the second-degree felony murder charge. Accordingly, we shall affirm the decision of the post-conviction court.

## II.

The State next contends that even if trial counsel had been able to object to the entry of nolle prosequis at trial, he had a sound and tactical reason for not doing so. The State asserts that Smith was not confronted with a "Hobson's choice" but, in fact, elected to give the jurors the option of an all-or-nothing verdict. According to the State, trial counsel specifically decided to focus on the difficulties the State had in proving culpable intent on Smith's part. In addition, the State asserts that Smith was not prejudiced by trial counsel's failure to object to the entry of the nolle prosequis. These contentions are without merit.

The State's argument that Smith elected to give the jurors the option of an all-or-nothing verdict, and that he pursued a trial strategy of putting before the jury only those

counts "which the defense deemed most propitious for securing an acquittal," does not find support in the record. Trial counsel's reasons for not objecting to the entry of nolle prosequi as to any count are not apparent. At the post-conviction hearing, trial counsel could not recall his thought process or whether he had discussed the issue with Smith. There is nothing in the trial transcript from which we can glean anything about counsel's consideration of the issue. In addition, there is nothing at all to suggest that the defense believed the charges that went to the jury were the "most propitious for securing an acquittal."

As for the State's contention that Smith was not prejudiced by trial counsel's failure to object to the entry of nolle prosequis at trial, we have already determined that the absence of fairness resulting from the entry of the nolle prosequis infected the entire trial and was prejudicial to Smith.

**JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY AFFIRMED; COSTS TO BE PAID BY CAROLINE COUNTY.**